# JOSIAH H. BISSELL

*v.*

# WILLIAM TERRY *et al.*

1. CONTRACT—*by what law governed.* A conveyance on contract for the sale of land, situate in this State, is governed by the laws of this State, and not by those of the State where the contract is made.

2. POWERS—*strict construction applied to agent's authority to sell land required by Statute of Frauds.* The written authority of an agent to sell lands of his principal, required by the Statute of Frauds, must receive the same strict interpretation as ordinary written powers, such as letters · of attorney or letters of instruction, in which the authority is never extended beyond that which is given in terms, or is absolutely necessary for carrying into effect that which is expressly given.

3. SAME—*construed with reference to surrounding circumstances.* Where letters written by the owner of land are relied on as conferring an authority to sell the same, they will be construed with reference to the surrounding facts and circumstances, in determining whether they were, in fact, intended to authorize the party addressed to make a sale.

4. SALE—*by one claiming to be agent.* Where a real estate agent of Chicago called upon the owner of lots, situate in that city, to know if they were for sale, and the owner informed him they were, and fixed his lowest price thereon, but requested information as to their real value, and for the purpose of learning such fact wrote to the agent, giving their numbers, and the latter, instead of giving the desired information, sent an offer for their purchase, which was declined, the owner replying that he adhered to the price first named by him, and the agent, on receipt of this, contracted, in writing, for the sale of the lots at the price named, which provided that if the owner should not ratify the same as to the incumbrances to be taken to secure the deferred payments, the purchaser should have the right to rescind the contract, and a copy of the contract was sent to the owner for his ratification, and the owner, on receipt thereof,

immediately returned the same, with a letter stating that he had previously sold the lots, and expressing regret that the offer had not come sooner: *Held*, on bill by the purchaser for specific performance, that the writing, given by the agent, under the circumstances, never became a complete and binding contract upon the owner.

5. In such case, even if the agent had written authority to sell the lots, but did not choose to exercise it without the personal approval of his principal, and sent the written contract to him to be ratified, this would leave the sale incomplete; and the agent, after notice from his principal that he had sold the property to another, would have no power to complete the same.

6. AGENCY—*revocation by implication of law.* Where the principal disposes of the subject matter of the agency, this, by implication of law, will operate as a revocation of the power of his agent to sell the same.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in equity, in the circuit court of Cook county, by appellant, Bissell, against William Terry and others, the appellees, to enforce specific performance by Terry of a contract for the sale of certain real estate therein described, situate in the city of Chicago, which contract was alleged to have been made by Terry, through his legally authorized agent, M. N. Lord, and is as follows:

"Sold to Josiah H. Bissell the following described pieces, parcels of land, situate in the city of Chicago, county of Cook, and State of Illinois, to-wit: Lots 5, 6, 7, 8, 9, and 16, 17, 18, 19, 20, 21 and 22, all in block 5, on Milwaukee Avenue; lots 31 to 35 inclusive, and 37 to 45 inclusive, in block 12, on Milwaukee Avenue; lots 45 to 48 inclusive, in block 7, all the above in Pierce's addition to Holstein, for the price and sum of five hundred and fifty dollars ($550) per lot, to be paid as follows: One-third cash, upon a delivery of a good and sufficient warranty deed, with release of dower, after title has been examined and found good, and the balance in two equal annual payments, with interest at eight per cent per annum, payable annually, to be secured back upon said property, to be in not less than three separate incumbrances,

adjoining lots to be placed together, and the one year notes to be separated from the two year notes, and each deed of incumbrance to contain a proviso that upon payment of the proportionate amount for which one or more lots are incumbered, they shall be duly released.

Abstract, showing a perfect title, to be furnished by vendor. *It is understood that if the owner shall refuse to ratify the separation of incumbrances, Bissell has the right to rescind this contract.* Abstract to be furnished within thirty days, or as soon thereafter as it can be reasonably procured.

Received, on account of the above purchase money, one hundred dollars.

Dated this 18th day of November, A. D. 1872.

(Signed)                    Wm. Terry,
                                    *per M. N. Lord, Agent.*"

Terry, in his answer, denied the contract, and the authority of Lord to make it, setting up the Statute of Frauds requiring such authority to be in writing. Answers were filed by the other defendants, and upon issues formed by replications, the cause was heard upon pleadings and proofs, and a decree passed dismissing complainant's bill, and he appealed to this court, assigning error upon that decree.

It appears, from the evidence, that Terry resided in Louisville, Ky., and Lord was a real estate broker, residing in Chicago; that on the 26th of October, 1872, Lord, being in Louisville, inquired of Terry whether he had some real estate in Chicago which he wished to sell. The latter replied that he had, and had a day or two previously received an offer for it. Lord wished to know the location of it. Terry not having the papers at hand, was then unable to give it. Upon Lord stating that he was in the real estate business, it was then arranged that Terry should, as soon as convenient, send descriptions to Lord at Chicago, and as the latter was expecting to return home on the following Monday, he was to ascertain the value and inform Terry. Lord testified that Terry

then told him that if he could sell the lots at $550 a lot, to sell them. This, Terry denies, and denies that he gave him any authority to sell. Neither party is corroborated on this point, except so far as the letters go. Two days after this interview Terry wrote Lord at Chicago the following letter :

"LOUISVILLE, Oct. 28, 1872.

"BRO. LORD : The numbers of lots fronting on the avenue are as follows : Block five (5), 5 to 9, inclusive ; 16 to 22 inclusive. Block 12, 31 to 35, and 37 to 45, inclusive. Block 7, fronting on Courtland street, 45, 46, 47, 48. I don't feel willing to take less that $550 per lot ; one-third cash, one and two years, with eight per cent interest, and would like to have more if to be had. Let me hear from you at your earliest convenience.

"Yours truly,

"W. TERRY."

Not hearing from Lord, on the 9th of November, 1872, Terry wrote him again :

"LOUISVILLE, Nov. 9, 1872.

"BRO. LORD : I wrote you some two weeks ago in relation to lots on Milwaukee Avenue, with numbers of same. I would like to hear from you on receipt of this, as to their value. I am offered $500 per lot, one-third cash, balance one and two years with eight per cent interest.

"Yours truly,

"W. TERRY."

Bissell having meanwhile made a proposition to Lord to purchase the lots at $525 each, the latter, November 12, addressed a letter to Terry, as follows :

"CHICAGO, Nov. 12, 1872.

"DEAR BRO. TERRY : I am offered $525 per lot for the whole of your lots ; one-third cash, balance in two years at eight per cent interest, payable annually. You are to furnish the purchaser an abstract, and title to be good in you ;

you to pay all taxes levied in 1872. Let me know by return mail.                    "Yours,

"M. N. LORD."

To which was the following reply :

"LOUISVILLE, KY., Nov. 14, 1872.

"BRO. LORD : Yours of the 12th inst. is to hand. I must adhere to my original proposition, $550 each, for all ; one-third cash, balance one and two years, with eight per cent interest. I am offered my price, with little variation in amount paid down.                    "Yours truly,

"W. TERRY."

This last letter was received by Lord on the 18th, same month, and Bissell being in Lord's office at the time, the let-ter was read to him. Immediately, on that day, the instru-ment set out in the bill was drawn up by Bissell, who is an attorney, residing in Chicago. It was signed by Lord, as it now appears, and by arrangement between him and Bissell, it was to be submitted by Lord to Terry, for his approval, by sending the latter a copy. The letter, inclosing the copy to Terry, is as follows :

"CHICAGO, Nov. 18, 1872.

WILLIAM TERRY—*Dear Bro.:* Yours of the 14th inst. received this afternoon. My party was in the office at the time, and I closed the sale on your description and terms, and stated in the contract, first, that the one year note should cover one-half of the property, and the other half in the trust deed, and to be released in one-third parcels, or in lots, if necessary ; *i. e.* all that were included in the trust deed un-der the first note, to be released on payment thereof at the end of the first year, if not released before ; and so with the second note at the end of two years. This is a sort of neces-sity, on account of the fact that it is retailed to Germans ; however, it generally amounts to nothing the first year, and not much the second year. Still, if one wants to pay an eight per cent mortgage, when money is worth ten per cent, all right ; it is not likely that it will be paid beforehand.

You will notice, in the copy of the contract which I send you, that you are to ratify or reject that part. It is our usual way with such property, and I do hope you will not object, as money is awful tight, and I have worked hard to earn my 2½ per cent commission. How about abstracts? If you have one, please send it, or give me an order, with instructions when and where to get it, and I will attend to it immediately. The papers I will make, and no cost, and forward to you. I consider the sale a good one, our market being so close that not much will be done till spring. Please to return the contract, with approval, and directions about abstract, etc. If you want to place the money on good paper, I can get you two per cent a month. Hoping this will meet your approval, I remain,

"Fraternally yours,

M. N. LORD."

Terry, upon the receipt of this letter, replied immediately, as follows:

"LOUISVILLE, Nov. 20, 1872.

"BRO. LORD: Yours, with copy of contract, came to hand this morning. I wrote you on yesterday that the property was sold. Parties advised me yesterday, or rather their letter came to hand advising me, and I accepted and then advised you. Inclosed I return you the copy of contract. I wish you had gotten your parties to the point sooner.

"Yours truly,　　　　　W. TERRY."

It further appeared that Bissell did not, in fact, pay the one hundred dollars acknowledged in the supposed contract, but instead thereof gave Lord his check for that amount, which, on the 19th of November, 1872, he demanded back of Lord. This check has never been paid.

Messrs. UPTON, BOUTELL & WATERMAN, for the appellant.

Messrs. COOPER, GARNETT & PACKARD, for the appellees.

190        BISSELL *v.* TERRY *et al.*        [Sept. T.

Opinion of the Court.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The principal question in this case is, whether the instrument set out in the bill, which the complainant sought to have specifically enforced in equity, as the contract of Terry, ever became obligatory upon him. That question, under the issues formed, involves two others: *First*—Whether Lord, the alleged agent, was duly authorized, within the meaning of the Statute of Frauds, to make that contract in the name of Terry. *Second*—Whether, if he was, a contract as alleged was completely made before the authority was revoked.

Counsel for appellant raised a question, *in limine*, that by the laws of Kentucky the authority of an agent to make such a contract is not required to be in writing. And they say that Terry, at the interview with Lord, at Louisville, in that State, on the 26th of October, 1872, gave the latter full and complete verbal authority to make a contract for the sale of the lands in question, and that therefore no question under the Statute of Frauds of the State of Illinois, can arise.

The first answer we make to that position is, that the fact is not established by a preponderance of evidence. Lord is the only witness who testifies to it, and who is interested, to the extent of his commissions, to make out the authority. But it is denied by Terry, who testifies that Lord was simply employed to ascertain and advise him as to the value of the lots, and in this, Terry is strongly corroborated by the correspondence. The second answer to this point is perfectly conclusive. The lands in question are situate in this State. That being so, any conveyance, or contract for the sale of them, would be governed by the *lex situs*. This is familiar doctrine, and scarcely needs the citation of authority for its support. *Sherman* v. *Gassett*, 4 Gilm. 521, and cases there cited; Story's Confl. of Laws, sec. 363 *et seq.*, sec. 435.

The statute provides that "no action shall be brought to charge any person upon any contract for the sale of lands,

tenements or hereditaments, or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, *or some other person thereunto by him lawfully authorized, in writing, signed by such party.*"

The same question might arise under this last clause, as upon the first branch of the section, as to what would constitute a sufficient "signing" within the meaning of the act. Otherwise the clause is clear and unambiguous, and not open to construction. But a question does arise, when a paper is produced, which is claimed to constitute an authority to make a contract for the sale of lands, etc., on behalf of another, as to what rule of construction will be applied to such writing. Upon due consideration of the evils which led to its adoption, its object and purpose, we are inclined to hold that the rule of construction to which such writings should be subject, is the ordinary common law rule, which is, that all written powers, such as letters of attorney, or letters of instructions, must receive a strict interpretation ; the authority never being extended beyond that which is given in terms, or is absolutely necessary for carrying the authority so given into effect. Dunlap's Paley on Ag. 192 ; Story on Ag. secs. 68, 69.

It is not claimed in this case, that there was any other authority from Terry to Lord, except what is contained in the letters of the former. These letters should be construed with reference to the surrounding circumstances. In the first place, Terry did not apply to Lord with reference to these lots; but the latter, being a land agent in Chicago, where the lots were, while on a visit to Louisville, called on Terry and made inquiries about the property and whether it was for sale. He then found that they were for sale, and that Terry had received a proposition of purchase from some other party ; that Terry was in doubt as to their real value, and whether he ought to accept the offer which had been

made. Lord, being in the business of real estate, volunteered his services to investigate, ascertain their real value and so inform Terry, and for this purpose wanted a description of them. This, Terry could not give, because he had not the requisite data at hand, but promised to send the numbers, etc., in a short time. We are satisfied, from the testimony of these witnesses, and the subsequent letters, that nothing more was intended by Terry than merely to avail himself of his friend's knowledge and facilities to ascertain the real market value of his lots. He had fixed in his own mind a minimum, but was evidently in doubt whether it was not too low. This interview was October 26, 1872. Accordingly we find that on the 28th, same month, Terry sent on to Lord the numbers and description of his lots, stating that he did not feel willing to take less than $550 per lot, one-third cash and balance in one and two years, with eight per cent interest, saying he would like to get more if he could, and calling upon Lord to let him hear from him at his earliest convenience. Not hearing from him, on November 9th, 1872, he addressed another letter to Lord, referring to his former letter, and saying, "I would like to hear from you, on receipt of this, as to their value. I am offered $500 per lot, one-third cash, balance one and two years, with eight per cent interest."

Lord, having conceived the idea of making commissions for himself, not only kept silent as to the value of the lots, but received a proposition from Bissell to purchase them for $525 per lot, one-third cash, and balance in two years at eight per cent interest. Up to this time Lord had no supposition of authority in him to enter into a contract in the name of Terry. Nor had Bissell ; for, at his request, Lord sent on this proposition to Terry for his approval or rejection. It was received by the latter and rejected. In Terry's reply of date November 14, 1872, he says, "I must adhere to my original proposition, $550 each, for all, one-third cash, balance one and two years, with eight per cent interest. I am offered my price, with little variation in amount paid down."

Now, it is from these letters, alone, that the authority in Lord to make the alleged contract set out in the bill is derived; for, on the same day of the receipt of the letter last above mentioned, the instrument was drawn. Tested by the rule of strict interpretation above laid down, and considered in the light of surrounding circumstances, no such authority was intended to be conferred, nor did the letters purport to confer it. Terry had fixed upon his minimum, and was desirous of obtaining Lord's opinion as to their real value. The latter skillfully abstained from giving an opinion, and kept putting propositions before Terry instead, thereby hoping to make his commissions of $2\frac{1}{2}$ per cent, as is shown by his letter of the 18th November, inclosing Bissell's second proposition. And besides, these letters of Terry disclose the fact that he was negotiating in his own behalf as to the property, all the time. Whatever authority Lord had, was that of a special agent. Bissell was bound to know the extent of that authority, and the evidence shows that he, in fact, did know. But the controlling circumstance in this respect is, that neither Lord nor Bissell acted, in the preparation of the instrument set out, upon the assumption that Lord possessed the authority, as agent of Terry, to make that a complete and binding contract upon the latter, without his personal approval. It was not delivered, but, with their mutual understanding and assent, was to be forwarded to Terry for his approval, which was accordingly done by inclosing it in Lord's letter to Terry, of the same date of the instrument, November 18, 1872. As consonant with this purpose, Bissell did not in fact pay to Lord the $100, the receipt of which is recited in the instrument called a contract, but gave Lord his check for that amount, under the arrangement that the latter was to hold it pending the submission of Bissell's second proposition of purchase to Terry for his approval, and if the latter approved, the amount was to be credited on the purchase money; if not, the check was to be returned. And on the next day after giving it, November 19th, Bissell declared

13—69TH ILL.

his purpose to withdraw his proposition, and demanded his check back of Lord. This check has never been paid.

Now, can it be maintained, upon any of the settled principles of contracts, that, under the circumstances of this case, the instrument set out became a complete and binding contract upon Terry, on the day when it was signed by Lord and sent to Terry for his approval? We do not understand appellant's counsel as so claiming. • If not, then when and how did it afterwards become so? Terry received the letter inclosing it to him for his approval, November 20, 1872. But on the day previous—the 19th—he had sold the property himself to another party, and by letter of that date advised Lord of the fact. So that, by reply to Lord, sent on the same day of the receipt of his letter inclosing the contract for approval, Terry returns the contract without his approval, stating, and of course as a reason, that he had, previously to the receipt of it, and on the 19th of November, sold the property to another party, and expressing his wish that Lord had brought this thing about sooner. He did not say in so many words that he did not approve of the proposition sent, because he had previously sold the property, but that is its meaning, and the only fair meaning to be put upon it. It would, therefore, be a forced and unnatural construction of that letter to say that it directly or impliedly ratified the act of Lord in signing the instrument. Then, it follows that, down to the time of the return of the instrument by Terry to Lord, without the approval of the former, it had received no validity as a contract. Could Lord give it any by any subsequent act on his part? Concede, for the sake of the argument, that, at the time of making it, he in fact had the authority in writing to make it, but had not chosen to exercise it without the personal approval of his principal, so that it was left incomplete, could he complete it after being notified that Terry had disposed of the subject matter of the agency? We think not. The power was subject to revocation at the pleasure of the principal, and when he disposed of the subject matter of the

agency, such act occasioned such a change of condition, such incapacity, as that Lord's authority would be revoked by operation of law.   Story on Ag. 481; *Gilbert et al.* v. *Holmes,* 64 Ill. 548.

We are of opinion that the contract set out was never obligatory upon Terry, and for that reason the decree of the circuit court should be affirmed.

*Decree affirmed.*