J. T. JOHNSON, Respondent, v. WILLIAM FECHT, Administrator, etc., Appellant.

**St. Louis Court of Appeals, May 13, 1902.**

1. **Evidence: ORAL TESTIMONY: LOST INSTRUMENT.** Where a letter from a principal to an agent, to sell a tract of land, has been lost, oral evidence is admissible to prove its contents.

2. ————: ————: ————. But evidence that a letter written and signed in a handwriting other than that of the one whose name was subscribed, came in an envelope containing a deed from the purported writer to another party, was not competent to prove that his writing and signing had been authorized.

3. ————: ————. A letter to an agent, authorizing the sale of land, which merely referred to it as the "forty-acre tract," did not sufficiently describe the land to permit it to be identified by extrinsic proof.

4. **Statute of Frauds: PRINCIPAL: AGENT: SALE OF LANDS.** Under section 3418, Revised Statutes 1899, the written authority to the agent to sell land for the principal must be strictly construed and scrupulously followed.

5. ————: ————: ————: EVIDENCE: STATUTORY CONSTRUCTION. An agent wrote to his principal, "We have sold the forty acres on the south side of the road for $1,000." The principal in his reply, acknowledged the receipt of "your favor regarding the forty-acre tract of land," and directed the deed to be forwarded for signing. No further description of the land was contained in either letter, nor was the name of the vendee mentioned, nor the fact that the agent had given a contract of sale: *Held*, that the description was insufficient to confer authority, under section 3418, Revised Statutes 1899, which provides that "no contract for the sale of land made by an agent shall be binding on the principal unless said agent is authorized in writing to make said contract."

6. ————: ————: RATIFICATION OF CONTRACT. Where an agent, having no authority to sell certain lands, gave a contract of sale of the tract to a vendee, and then wrote his principal that he had sold "the forty acres on the south side of the road for $1,000"

but did not mention the name of the vendee, nor that he had signed a contract of sale in the principal's name, a letter in reply by the principal, acknowledging the receipt of "your favor regarding sale of forty acres tract of land," and directing the deed to be forwarded for signing, was not a ratification of the contract of sale, as the principal could not ratify the contract without knowing its full terms.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes*, Judge.

REVERSED AND REMANDED, and CERTIFIED TO THE SUPREME COURT.

### STATEMENT OF THE CASE.

Lorenz Feger formerly lived in Audrain county, where he died on the seventeenth day of January, 1900, and after his death the demand which is the subject-matter of this controversy was presented for allowance against his estate, of which William Fecht is administrator. The demand is as follows:

"William Fecht, Administrator of Lorenz Feger, deceased,
    Dr., to James T. Johnson.
    "To damages for failure to convey forty
        acres of land bought of said Feger
        by Johnson, January 5, 1900......$400.00
    "To cash paid and not returned on said
        purchase .. .....................    50.00
                                          ————
    "Total .. .. ...................$450.00"

Feger had a farm in Audrain county of one hundred and twenty-eight and one-half acres, of which eighty-eight and one-half acres lay to the north of a road and forty acres to the south. In December, 1889, he was in poor health and went to

Johnson v. Fecht.

St. Louis to be treated in a sanitarium.    Before going he made a verbal arrangement with Hopkins & Ricketts, real estate brokers in the city of Mexico, to sell said farm for him for four thousand dollars.    They sold the portion north of the road to T. B. Hill for three thousand dollars and notified Feger, who was at the time in St. Mary's Infirmary in the city of St. Louis.    Feger wrote a letter to his nephew, by the name of Dawson, who lived in Audrain county, approving the sale as follows:

"St. Louis, Dec. 31, 1899.
"William Dawson:
"Dear Sir:    I received a letter from Hopkins & Ricketts, saying they had a buyer for the eighty-eight acres with the building on it, for three thousand dollars.    You go to them and have them sell.    They want an answer by Tuesday.
"Yours truly,
(Signed)                              "L. Feger."

On this letter being shown to them, Hopkins & Ricketts made out a deed conveying the eighty-eight and one-half acres to Hill and sent it to Feger.    Feger sent back the deed executed, but imperfectly acknowledged, and it had to be returned to him for re-acknowledgment.    This was attended to and when he again sent the deed to Hopkins & Ricketts, he inclosed a letter with it which was lost, but was shown by the testimony of those men to have been written and subscribed with Feger's name in some one's else handwriting—whose was not shown; and the only circumstance to show Feger sanctioned it was that it came in the same envelope as his deed.    Parol testimony of its contents was received by the circuit court and it was proven to have contained substantially this direction:

"I am glad you have sold the eighty-eight acres; now sell the forty."

On the fifth day of January, Hopkins & Ricketts made a

contract with the plaintiff, Johnson, to sell him the forty acres for one thousand dollars, of which he paid fifty dollars at the time and they executed the following receipt:

"50.00.                         Mexico, Mo., Januay 5, 1900.

"Received of James T. Johnson the sum of fifty dollars, earnest money or first payment on purchase price of the following described real estate belonging to L. Feger, and situate in the county of Audrain and State of Missouri, which we have this day sold to said James T. Johnson as agents of said L. Feger, at and for the price and sum of one thousand dollars, to-wit:   One and one-half acres in the northwest corner of the southwest fourth of the northeast quarter; twenty acres, the north part of the southeast fourth of the northwest quarter and nineteen acres, being all that part of the sixty-one acres the west part and north part of the north half of the northwest quarter that lies south of the county road, containing in all forty and one-half acres more or less; all in section twenty-two, township fifty-one north, range nine west, of the fifth P. M., and being all that part of the one hundred and twenty-eight and one-half acre tract of land conveyed to said L. Feger by John S. Smith and wife by warranty deed, recorded in book 55, at page 17, of the Audrain county deed records, that lies south of said county road.   Possession to said premises given March 1, 1900.

(Signed)                  "HOPKINS & RICKETTS,
                                "Agents for L. Feger."

On the same day they wrote this letter to Feger:

                          "Mexico, Mo., Jan. 5, 1900.
"Mr. Lorenz Feger, St. Louis, Mo.

"Dear Sir:   We have sold the forty acres on the south side of the road for one thousand dollars.   This completes the sale of the whole tract for four thousand dollars.   We are

glad to make this sale, as you seemed to prefer to close out the whole farm. Shall we forward deed to you there or will you be home in a few days? The party would like to close up the deal in a few days. "Yours very truly,

"HOPKINS & RICKETTS."

They received within a day or so the following answer:

"St. Louis, Jan. 6, 1900.
"Messrs. Hopkins & Ricketts, Mexico, Mo.

"Gents: I am just in receipt of your favor of the 5th inst., regarding the sale of the forty-acre tract of land. In reply would say as follows: Have deed made out and send to me for signing, as I can not say definitely when I will be able to return to Mexico. I sent you the other deed yesterday, properly acknowledged by notary public. Please acknowledge receipt of same and oblige.

"Yours respectfully,

"LORENZ FEGER."

The last letter was written by a fellow-inmate of the infirmary by the name of Lee, with whom Feger became intimate while they were in the institution together. Lee acted as amanuensis in writing that letter which the parol testimony satisfies us was written and signed by him in Feger's presence, and read over to the latter after it was written. On receipt of it Hopkins & Ricketts sent the following letter to him and inclosed a deed to Johnson for the forty acres of land to be executed:

"Mexico, Mo., Jan. 8, 1900.
"Mr. Lorenz Feger, St. Louis, Mo.

"Dear Sir: We received the deed to Amanda Hill duly acknowledged. We expected to close the deal Saturday, but

Vol 94 app—39

the roads were in such bad condition that they could not get in.   We will close it up to-morrow, and place the money in the Southern Bank to your credit.   We find that the taxes are not paid on the farm for 1897 and 1899, two years.   In regard to the suggestions made by your notary public, will say that the land was deeded to you as L. Feger, and we made the deed from you to correspond.   That's all right, however.   We inclose deed for you to execute to the forty acres south of the road.   As soon as deed is returned we are ready to close the deal.   Mr. Johnson wants an abstract to the land. We turned the one you had over to Mr. Hill.   We will say to you, in this connection, that we will make you the abstract to the forty acres at half-price, as you already have one to the whole farm. We hope this will be satisfactory to you.   Will write you as soon as we get the Hill deal closed.

"Yours very truly,

"HOPKINS & RICKETTS."

Feger never executed the deed to Johnson, but sold the land on the sixteenth day of January to William Fecht, who is his wife's nephew and now the administrator of the estate, without consulting the agents who had made the sale to Johnson.   After Feger's death, Johnson presented this claim for damages on account of the failure to carry out the contract for the sale of the land which Hopkins & Ricketts had made. The case went from the probate court of Audrain county to the circuit court, where there was a judgment for the plaintiff, from which the defendant took this appeal.

Six instructions were given to the jury at the instance of the plaintiff, the purport of all of them being that the above-quoted letter, dated the sixth day of January, and written by Lee for Feger, was a ratification by Feger of the contract made by Hopkins & Ricketts with Johnson.   Two of those instructions will be quoted to illustrate the theory propounded:

"The court instructs the jury that if Feger after being notified of the sale made to plaintiff, wrote the letter or authorized the letter dated January 6, 1900, without any inquiry of the agents, Hopkins & Ricketts, as to the terms of said sale, then said letter is not only a ratification of what Hopkins & Ricketts had done as his agents, but it was a ratification of the contract made by them, and is as binding upon him and his estate as if he had made the contract himself, and if you find that said Feger either wrote said letter or authorized the same, then the defendant is liable on the said contract for breach of contract and damages, and you will return a verdict for the plaintiff."

"The court instructs the jury that if you find that the said deceased, L. Feger, wrote or authorized the writing of the letter dated January sixth and the same was received by Hopkins & Ricketts, then the contract of sale made the fifth of January was ratified, and everything Hopkins & Ricketts had done regarding said sale has become the act of said L. Feger, and if you so find, you will disregard the letter dated January 8, 1900, and read in evidence by defendant."

The defenses were grounded on the statute of frauds, and were: first, that the letter of January the sixth did not bind Feger because Lee signed his name, without written authority to do so; second, that said letter did not constitute a ratification of the contract made by Feger's brokers with Johnson unless Feger knew when it was written who was the vendee; third, that neither that letter, nor any other in the correspondence, described the land to be sold and, hence, constituted neither an authority to Hopkins & Ricketts to make a contract of sale, nor a ratification of the contract they made; fourth, that Feger's acts did not ratify the sale because he acted without full knowledge of its terms; fifth, that if a term was introduced by Hopkins & Ricketts into the sale contract made with Johnson in regard to furnishing the latter an abstract at Feger's expense, which Feger had not authorized, his

letter, written before he knew of this term, was not binding on him.

All instructions but two requested by the defendant were refused. One of the two given told the jury that if the land was worth no more than Johnson was to pay for it, he could only recover the fifty dollars paid to bind the bargain; the other, that if they found from all the facts and circumstances Feger neither wrote nor authorized Lee to write the letter of January sixth, their verdict should be for the defendant. Thirteen of the instructions requested by the defendant were refused of which we recite five to exemplify fully how the case was presented to the jury:

"The jury is instructed that although you may find that Hopkins & Ricketts did sell the forty acres of land to Johnson, if you further find from the evidence that L. Feger, on the sixth of January, 1900, when the letter of that date to Hopkins & Ricketts signed 'Lorenz Feger' was written, did not know to whom Hopkins & Ricketts had sold the same, then under the evidence in this case you should return a verdict for defendant, even if you should find that said letter was written by authority of said Feger."

"Even if Hopkins & Ricketts did execute and deliver to the plaintiff the written receipt dated January 5, 1900, and plaintiff did pay said Hopkins & Ricketts fifty dollars, if you further find that said Hopkins & Ricketts did not at the time, have written authority from L. Feger to so sell said land, then, at the date when said contract was made defendant was not bound by it."

"The jury is instructed that under the evidence in this case, if L. Feger wrote or authorized the letter of January 6, 1900, to be written and the only information he had at that time of a sale of said forty acres was the information given him by the letter of January 5, 1900, from Hopkins & Ricketts, and if, on the receipt of the letter by Feger from Hopkins & Ricketts, dated Januaray 8, 1900, said Feger found

that said Hopkins & Ricketts had made a different sale of land than he employed them to make, then he had the right to refuse to deed said land to Johnson."

"The jury is instructed that if Feger wrote the letter of January 6, 1900, he could thereby ratify the sale of the forty acres of land to Johnson only to the extent of the knowledge of said sale as then known to him, and if such sale was materially different from what was reported to him in the letter from Hopkins & Ricketts, then Feger was not required to execute a deed from Feger to Johnson and the defendant is not liable herein."

"The court instructs the jury that if Feger did write the letter of January 6, 1900, to Hopkins & Ricketts, or directed the same to be written, and in answer thereto Hopkins & Ricketts wrote the letter of January 8, 1900, inclosing a deed to be executed to Johnson, and in said letter required Feger as an additional condition of such sale to furnish Johnson an abstract to said land, then Feger had the right to refuse to execute such deed and furnish such abstract, and your verdict should be for defendant."

*Fry & Clay* for appellant.

(1) "No contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." R. S. 1899, sec. 3418. (2) A ratification must be in writing, and as full and complete as the contract to sell. Hawkins v. Mc-Groarty, 110 Mo. 546; Palmer v. Williams, 24 Mich. 328. (3) It is claimed that the letter of January 5, and the answer of January 6, make out a ratification of the contract of January 5 by the agents who, it is admitted, had no written authority to make this sale. Neither of these letters describe the land, give the name of the purchaser, nor the terms of the contract. A party can not accept the terms of an offer before

they are communicated to him.    James & Son v. Fruit Jar Co., 69 Mo. App. 213.    (4)    Absolutely no written authority to sign Feger's name, or to execute any instrument whereby his lands might be affected, was given to witness Lee.    "No contract for the sale of lands made by an agent shall be binding upon the principal unless such agent is authorized in writing to make said contract."    R. S. 1899, sec. 3418; Greening v. Steele, 122 Mo. 287.    (5)    Prior to the amendment, in 1887, of above section, the agent who was authorized to sell land, whether such authority was in writing or not, had authority to sign his principal's name to a contract in writing for the sale of land.    Since said amendment the rule is otherwise.    Glass v. Rowe, 103 Mo. 513; Greening v. Steele, 122 Mo. 287.

*George Robertson* for respondent.

(1)    Reading the correspondence between Feger and his agents, and the deed made by them and sent to him for signature, containing a proper description of the land and the terms of sale, is a sufficient memorandum to take the case, as between Feger and the agents, out of the statute.    (2)    In the case of Baine v. Wiggins, 139 U. S. 210, it is held that a deed, though void as a conveyance, may be read in connection with the letters between the parties for a description of the land sold, and that, taking them all together, it was a sufficient memorandum to take the case out of the statute of frauds.    Freeland v. Ritz, 12 L. R. A. 561; Louisville, etc., v. Lovick, 2 L. R. A. 212; Heideman v. Wolfstein, 12 Mo. App. 366; Arnsby Co. v. Eckerly, 42 Mo. App. 299; Fox v. Courtney, 111 Mo. 147; Mantz v. Maguire, 52 Mo. App. 106; Block v. Crother, 74 Mo. App. 480.    (3)    The letter of Feger, written the sixth of January, must be read in connection with the contract between his agents and Johnson, and the two together, as in the Pennsylvania case, are sufficient to satisfy

the statute; for when Feger wrote the letter of January 6, that was an adoption of the contract which they had made. Mechem on Agency, secs. 128, 129; Kelly v. Railroad, 141 Mass. 497; Porter v. Woods, 138 Mo. 552; Rogers v. Kneeland, 10 Wend. 219. (4) The ratification, by the principal, of an unauthorized act of an agent relates to the date of such act as between the immediate parties. Kempner v. Rosenthal, 81 Tex. 12; Maclean v. Dunn, 4 Bing. 722.

GOODE, J.—We found this case so perplexing that we set it down for a second argument; but notwithstanding an able presentation of both sides by the respective counsel, and our own protracted study of the point involved, we announce our conclusion with diffidence.

The effect of the rulings on the instructions was to require the jury's verdict to turn exclusively on whether or not Feger authorized Lee to write the letter relied on as a ratification of the written contract of sale signed by Hopkins & Ricketts as Feger's agents; but the judgment is now sought to be upheld on broader grounds; to-wit, by construing the entire correspondence in regard to the sale of the forty-acre tract as well as the deeds to Hill and Fecht.

The letter containing the direction to sell said tract had been lost, and oral evidence was admissible to prove its contents. As that letter is counted on as giving authority in writing to Hopkins & Ricketts to make the sale in question, it was for the jury to say whether Feger wrote it or authorized the writing of it, if there was sufficient evidence on that issue to be submitted. There was, however, practically no evidence at all; nothing but the one circumstance that it came to Hopkins & Ricketts in the envelope containing the deed to Hill. That Feger authorized it to be written or approved it after he knew its contents is, at most, a bare surmise; so we think that instead of conferring authority, as a matter of law, it was not even competent to prove authority.

The letter written by Lee for Feger was treated by the circuit court as an absolute ratification of the contract Feger's agents had made with Johnson. Whether it was or not, depends upon the terms required to be in the written authorization which must be given by a landowner to an agent to enable the latter to bind him by an agreement for the sale of his land; for there was nothing done by Feger to work an estoppel, and whatever documents are relied on to establish a ratification must be complete enough to have constituted authority to his agents to make the agreement if the documents had been written beforehand. Hawkins v. McGroarty, 110 Mo. 546.

What interpretation shall be given to the amendment of the statute of frauds, requiring an agent's authority to make an agreement for the sale of realty, which will bind his principal, to be in writing, as regards the contents of the instrument of authorization? The clause in question reads:

"And no contract for the sale of land made by an agent shall be binding on the principal, unless said agent is authorized in writing to make said contract." R. S. 1899, sec. 3418; Sess. Acts 1887, p. 195.

Does that enactment mean that an instrument, delegating power to an agent to contract for the sale of land, must as completely state the terms of the agreement it is contemplated he may make, as the memorandum of the agreement made pursuant to the power, to bind the vendor; that is, contain a description of the property, the consideration, the names of the parties and all the essential terms of the sale? Boyd v. Paul, 125 Mo. 9; Rucker v. Harrington, 52 Mo. App. (K. C.) 481.

No case to clear up this difficult question of interpretation has been found; perhaps because few States have a statute providing that a broker must be empowered in writing to make contracts for the sale of lands; and such foreign statutes of frauds as contain a clause on the subject differ materially in their language from ours, the usual form being that no ac-

tion shall be brought to charge a person on a contract for the sale of lands unless there is a note or memorandum of the agreement signed by the party to be charged or some person thereto lawfully authorized in writing; thus conforming the provision to those clauses which relate to the execution of instruments creating or assigning leasehold estates.

Prior to the amendment of the statute, the law in this State was that a broker verbally empowered to sell realty might execute a written memorandum or contract of sale to any purchaser, and the landowner would be bound by it, on the principle that a delegation of power to an agent to do a specific act carries the right to use the necessary means to make the agency effective. Glass v. Rowe, 103 Mo. 513, and cases cited. While that doctrine was widely accepted, it was and is rejected in some jurisdictions where there has never been a statute on the subject and the rule enforced that an agent authorized to sell can not bind his principal by a memorandum unless he has authority also to sign the memorandum. Chapman v. Jewett, 24 S. E. (Va.) 261; Halsey v. Montview, Id. 258; Henderson v. Beard, 51 Ark. 483; Edwards v. Johnson, 3 Houst. (Del.) 435. And this conflict in the cases really arose out of a difference of opinion as to what sufficiently proved the agent's authority to sign the memorandum; for in all instances it was held his authority must expressly or inferentially embrace the power to sign or the principal would not be bound. Coleman v. Garrigues, 18 Barb. (N. Y.) 60; Rutenberg v. Main, 47 Cal. 213; Browne on Statute of Frauds (5 Ed.), sec. 370.

The purpose of this amendment should be considered in striving to interpret it. Was it the intention of the Legislature to simply provide that an agent's authority to sell real estate must be in writing in order for him to bind his principal by a contract, or rather to provide that an agent must be authorized in writing to execute a particular contract in order for him to bind his principal thereby? The act was entitled

"An amendment to the Statute of Frauds," and its object must have been to still further obviate the evil against which that statute was originally directed, namely; the untrustworthiness of oral evidence in relation to certain kinds of agreements, which it sought to remove by requiring written evidence of those agreements. A memorandum of a contract for the sale of lands has been exacted for centuries, the statute having been enacted largely on account of the perpetration of frauds in regard to such contracts by false testimony after the relaxation of the ceremony of livery of seizin, or investure in transferring real property, a public ceremony and therefore an effective protection against trumped-up claims. The cognate mischief to be cured by the amendment in question was not so much the proof of authority to agents to sell lands by false swearing, as the uncertainty of the terms they were empowered to sell on, concerning which honest as well as dishonest disputes frequently arose that could only be prevented by providing that no contract made by an agent for the sale of realty should bind his principal unless the agent was authorized in writing to make it. The language of the act favors this view; for it does not say the agent must have written authority to sell, but to make said contract, namely; the very one he undertakes to make.

Such references as our Supreme Court has made to the statute as amended countenance that construction.

In Hawkins v. McGroarty, supra, the defendant had authorized his broker in writing to sell a piece of land for him at a certain price and the broker sold for one hundred dollars less than that price, giving plaintiff, who was the purchaser, a receipt in Maull's name containing the terms of the sale. A bill for specific performance was filed which pleaded that receipt and acts claimed to be a ratification. The agent swore he notified Maull of the terms of sale and the latter made no objection. He did, however, sell to McGroarty the next day. After stating that a ratification must be made in the same mode

as the law requires the previous authority to be, the opinion says, in a paragraph .which contains a passage significantly italicised:

"Under the statute as it now reads, requiring written authority *for the contract which the agents make,* there can be no question, it would seem, that there was no such ratification here as could, by any process of reasoning, bind the defendant Maull to specifically perform the contract in question, which his agent Heimans had no written authority to make."

The italicised words indicate that the Supreme Court took the view that an agent must have written authority for the contract which he executes and therefore to ratify it the principal must know its full terms; or at the very least, that it has been made, and Feger did not know that much.

It has been ruled in States having statutes more or less like ours that the written authority to the agent must be strictly construed and scrupulously followed. Bissell v. Terry, 69 Ill. 184; Kozel v. Dearlove, 144 Ill. 23; O'Shea v. Rice, 49 Neb. 893; Meux v. Hogue, 91 Cal. 442.

Kozel v. Dearlove, supra, went far in construing the Illinois statute requiring the agent's authority to be in writing, holding that a contract executed by an agent different from the one authorized, was non-enforcible although it secured terms more favorable to the principal than the latter demanded. We would be reluctant to follow that ruling. The opposite view was taken on sounder reasoning in Bassett v. Rogers, 165 Mo. 377.

The decision in O'Shea v. Rice, supra, seems to have involved the very point controverted in the present case, although the opinion is not explicit. Rice had written a letter to a real estate agent by the name of McBride who resided in Madison county, Nebraska, where Rice had a tract of land, to procure him a purchaser of the land. McBride wrote him that he had an offer of six hundred dollars for the property, without

stating the terms of sale or payments, to which Rice replied that he would take that price if the purchaser would pay Mc-Bride's commission, but not otherwise. This letter was written on the tenth day of January, and on the thirteenth McBride sold the land to O'Shea for six hundred dollars, signing a written receipt for the money in which he described the land and the terms of sale and bound Rice to furnish an abstract of title. On the next day he wrote to Rice telling him of the sale and inclosing a deed which he directed Rice to execute and send to a bank in Madison with the abstract of title and that the balance of the money would be paid to the bank. Rice sent the deed to the bank, telling it to pay McBride four dollars out of six hundred dollars for the abstract. Certain defects of title were detected and it was thought necessary to get quitclaim deeds from other parties to cure them. Rice refused to do this, his deed was returned to him and O'Shea afterwards filed a bill to have the contract performed. It was contended that even if the correspondence did not authorize McBride to bind the defendant by the agreement to sell to O'Shea, which he executed in the defendant's name, a ratification of the agreement should be implied from the defendant's partial execution of it. On this proposition, the Supreme Court of Nebraska said:

"It is elementary law that knowledge by the principal of the material facts is an essential element of an effective ratification of the unauthorized acts of his agents. The first intimation conveyed to the defendant of the execution in his name of a written agreement for the conveyance of the property in controversy was by letter from McBride bearing date of February third—two days previous to his repudiation of the transaction by directing a return of the deed. We agree with the district court that the agreement relied upon is void under the provisions of the statute of frauds and that the evidence fails to establish a ratification thereof by the defendant."

The statute construed in that case is as follows:

"Every instrument required by any of the provisions of this chapter to be subscribed by any party, may be subscribed by his agent thereunto authorized by writing."

That law is similar to the one we are considering and the effect of the foregoing decision is that the agent's authority to bind the principal must be an authority to execute the contract of sale, not merely authority to sell or find a purchaser.

The letter written by Hopkins & Ricketts on the fifth day of January, to which Feger replied on the following day, neither contains a description of the land, the name of the vendee, Johnson, nor information about the contract that Hopkins & Ricketts had signed to sell the land to Johnson. Feger's answer did not describe the land, in our opinion, sufficiently for it to be identified by extrinsic proof. It was spoken of as the forty-acre tract, and the forty acres on the south side of the road, but the county was not named. An attempt was made to show it was all the land Feger had in Audrain county, but the witnesses only swore if he had any other they did not know it. He may, however, have had land which would have answered to the designation in the letters, somewhere else. We have no doubt the description was insufficient to answer the requirements of the statute of frauds. Weil v. Willard, 55 Mo. App. (St. L.) 376; Fox v. Courtney, 111 Mo. 147.

If the written authority to the agent must be as full as the memorandum of sale, then the correspondence would have been insufficient to empower Hopkins & Ricketts to execute the contract with Johnson. Ringer v. Holtzclaw, 112 Mo. 519.

Nor is the plaintiff's case helped by the deeds. The deed to Hill contains no description of the land in question, the deed to Johnson was never signed by Feger and the deed to Fecht certainly had no connection with the Johnson transaction.

If there was no writing of Feger's adequate to empower Hopkins & Ricketts to execute the agreement with Johnson in his name in the first instance, then, as heretofore said, there

was no ratification of said contract after it was executed. Feger received none of the purchase money, never signed the deed to Johnson, nor broached the subject thereafter to his agents, but conveyed the land to Fecht.

O'Shea v. Rice, supra, is a clear authority against the theory of ratification, and based on circumstances more cogent in favor of that theory than we have here. In fact, there was no circumstance tending to show a ratification except the letter written the sixth day of January. At that date Feger was ignorant of the party with whom his agents had contracted and was not apprised that they had signed a contract in his name. It is difficult to see how he can be held to have ratified an affair of which he had no knowledge. The essence of the ratification of an unauthorized act, performed by one party in another's behalf, is that the latter approved the act after he knew all about it.

It is necessary to reverse the judgment in respondent's favor on account of the lower court construing Feger's letter to be an absolute ratification of the contract made with Johnson by Hopkins & Ricketts; because he simply knew at that time his agents had found a purchaser at the price he asked, without knowing who the purchaser was or that an agreement had been made in writing, and as soon as the deed sent for him to execute apprised him of the full terms of the agreement, he repudiated it. The proposition that a party who approves a contract when ignorant of its terms becomes bound thereby, is not applicable to contracts affected by the statute of frauds, as to which the rule is that in the writings relied on as a ratification, though they may be separate documents, all the terms of the agreement must be found. Christensen v. Wooley, 53 Mo. App. (St. L.) 53.

On an attentive survey of the entire record, we find no evidence which we think takes the case out of the operation of said statute, and it is unnecessary to remand it for further proceedings. The judgment is, therefore, reversed. *Barclay,*

*J.*, concurs; *Bland, P. J.*, dissents, and requests that the case be certified to the Supreme Court because in conflict with Block v. Crowther, 74 Mo. App. 480. It is so ordered.