JOHNSON v. FECHT, Administrator of the Estate of LORENZ FEGER, Appellant.

**Division One, December 22, 1904.**

1. **AGENT'S CONTRACT FOR SALE OF LAND: Sufficient Writing: Identification of Land.** Deceased being the owner of 128.5 acres of land, through which a public road ran dividing the tract into two pieces, one containing 88.5 acres, and the other 40 acres, verbally authorized real estate agents to sell the same for him for $4,000. They sold the 88.5 acres for $3,000, and he executed a deed therefor, and in the envelope returning the deed inclosed a letter in which he said: "I am glad you have sold the eighty-eight acres; now sell the forty." *Held*, that this letter, because of its failure to identify the land, did not confer on the agents authority to bind the deceased to a contract of sale of the forty acres, so as to answer the requirements of the Statute of Frauds, and hence, unless in some legal way the sale

Johnson v. Fecht.

was subsequently ratified by him, the purchaser from the agents cannot recover from the estate of deceased earnest money paid the agents and damages for a breach of their contract of sale.

2. ——: ——: ——: **Parol Evidence.** If to identify the land some fact must be supplied which lies wholly outside the written authority, that fact cannot be supplied by parol evidence. That fact cannot be supplied by parol although the owner of the land and his agent may have *aliunde* understood what tract was referred to by the indefinite words used in the written authority.

3. ——: **Ratification.** As the statute requires the authority of an agent to bind a principal to a contract for the sale of land to be in writing, so must a ratification of a sale by the agent not so authorized be in writing.

4. ——: ——: **Identification.** Deceased on being informed that his agents had sold 88.5 acres of his land in accordance with a verbal contract to sell 128.5 acres for $4,000, wrote to them: "I am glad you have sold the eighty-eight acres; now sell the forty." They did so, and then wrote him: "We have sold the forty acres on the south side of the road for one thousand dollars. This completes the sale of the whole tract for $4,000," and asking whether they should send him a deed to be executed or whether he would soon be at home, and he replied: "I am in receipt of your favor regarding the sale of the forty-acre tract of land. In reply would say as follows: Have deed made out and send to me for signing, as I cannot say definitely when I will be able to return." They complied with that direction, but he did not execute the deed. *Held*, that the letter authorizing the sale of the forty-acre tract cannot, because of its failure to identify the land, be held to be a compliance with the statute which requires the agent's authority to sell land to be in writing, *and*, for the same reason, the subsequent correspondence cannot be said to be such a ratification of the sale as meets the requirements of the statute.

5. ——: ——: **Alteration: Cost of Abstract.** Where the agent notifies the principal that he has sold the land for the price agreed upon, and the principal authorizes the agent to make out and send a deed, and the agent complies with that request, but by letter informs him that the cost of an abstract not theretofore mentioned in the correspondence is to be paid by the principal, there is such an alteration in the contract as to destroy whatever effect at ratification the previous correspondence imported.

· Transferred from St. Louis Court of Appeals.

Reversed.

*Fry & Rodgers* for appellant.

All of the authorities are agreed that the memorandum must state the contract with reasonable certainty, so that its essential terms can be ascertained from the writing itself without resort to parol evidence. Ringer v. Holtzclaw, 112 Mo. 522; Boyd v. Paul, 135 Mo. 13; Kelly v. Thuey, 143 Mo. 422; Weil v. Willard, 55 Mo. App. 376; Schroeder v. Taaffe, 11 Mo. App. 267; Scarritt v. Church, 70 Mo. App. 178; Fox v. Courtney, 111 Mo. 147. The writing must be a guide to find the land, must contain sufficient particulars to point out and distinguish the tract from any other. Burns v. Freling, 98 Mo. App. 270; King v. Wood, 7 Mo. 389; Beckham v. Upham, 97 Mo. App. 164; Whaley v. Hinchman, 22 Mo. App. 485. The two letters constitute the writing. The writing does not give the county or State, section, township or range, in which the land was located. It does not indicate the road referred to or describe or locate it. No specific forty-acre tract of land is mentioned. For all that appears the deceased might have had several forty-acre tracts "on the south side of the public road." The name of the purchaser is not given. It is apparent that no one could locate the land from what appears on the face of the writings, and the writings do not refer to any external standard of description, whereby it could be identified. As to what land was sold or referred to could be ascertained only by oral evidence.

*Geo. Robertson* for respondent.

(1) The court's criticism of the letter written from Feger to Hopkins & Ricketts, saying, "go ahead and sell the 40 acres," is error. The testimony shows that this letter was received from Feger in response to a letter from Hopkins & Ricketts to him, notifying

him of the sale made of the 88 acres to Hill. When this court says that this letter was "practically no evidence at all," what is meant by the word "practically" is not clear. The letter was either evidence or no evidence, and if it was any evidence whatever, it is for the jury to pass upon its credibility. If Feger wrote that letter or authorized it, then it was competent evidence and authority to make the sale. (2) As to the point that there was no evidence to show that Feger owned only the 40 acres, witness Ricketts, upon that point in the transcript said, "I am not positive, but am sure as I can be that Feger didn't own other land in Audrain county in January, 1900, than the 128 acres." (3) O'Shea v. Rice, 49 Neb., cited by the court, is not an authority in favor of the defendant and is contrary to the rule in Mechem on Agency, sec. 128. It is there said: If the principal desires to ratify the unauthorized act of an agent "he may fully inform himself of the material facts, or he may intentionally assume the risk without injury, or he may deliberately ratify upon such knowledge as he possesses without caring for more." The author cites the following cases in support of these facts: Lewis v. Read, 13 M. & W. 834; Kelly v. Railroad, 141 Mass. 496. But Feger had notice by letter dated the 5th of January of every essential part of the trade. The agent's authority was to find a purchaser for the 40 acres at $1,000. The purchaser's name was immaterial, for the agent was limited to no particular purchaser. From the very nature of the contract of agency the name of the purchaser was a matter immaterial to the seller. The price was only essential, and of this he had notice. The law implies that he would convey by general warranty deed, for when he sold he would be expected to convey a good title. Further upon the question of ratification see Rogers v. Kneeland, 10 Wend. 219. (4) The decision in this case is contrary to the following Missouri cases: Moore v. Mountcastle, 61 Mo. 424;

Whaley v. Hinchman, 22 Mo. App. 483; Hawkins v. McGroarty, 110 Mo. 446; Greeley & Co. v. Capen, 23 Mo. App. 301; Gelatt v. Ridge, 117 Mo. 554; Porter v. Woods, 138 Mo. 559; Black v. Crowther, 74 Mo. 480. (5) Under the case of Bain v. Wiggins, 139 U. S. and Newton v. Bronson, 13 N. Y., the deed enclosed by Hopkins & Ricketts to Feger for signature, although never signed by him, and containing, as it did, a correct description of the land, may be referred to to help out the defective description in the letters between the agents and Feger, if there be such defect. Under the following recent Missouri cases, the judgment of the circuit court should be affirmed: Smith v. Wilson, 160 Mo. 675; Yoder v. White, 75 Mo. App. 155. The letters between Feger and his agents undoubtedly not only authorized the sale, but Feger's letter to them directing the preparation of the deed, ratify the sale, and the letters taken in connection with the contract which Feger ratified, entered into between the agents and the purchaser, satisfy the Statute of Frauds.

MARSHALL, J.—This is a proceeding at law to recover four hundred and fifty dollars, damages for alleged breach of contract between the plaintiff and the deceased Lorenz Feger. The claim was presented for allowance against the estate of Lorenz Feger, of which the defendant Fecht is the administrator, and was afterwards appealed to the circuit court of Audrain county, and there tried, resulting in a judgment for the plaintiff for two hundred and twenty-five dollars, from which the defendant appealed to the St. Louis Court of Appeals, where the judgment was reversed, without remanding the cause; but one of the judges of that court being of opinion that the decision therein was in conflict with the decision of the Kansas City Court of Appeals, in Black v. Crowther, 74 Mo. App. 480, the cause was certified to this court, where it now stands for adjudication as in cases of original appeals

to this court. [Amendment of 1884 to Const., sec. 7.]

The case has been ably briefed and argued by counsel, and the opinion of the learned judge of the St. Louis Court of Appeals is so full and complete as to make the labor of this court very light in this case.

The facts are fully reviewed and the laws are ably discussed by the St. Louis Court of Appeals (Johnson v. Fecht, 94 Mo. App. 605), and that opinion, as well as the opinion of the Kansas City Court of Appeals with which it is said to be in conflict (Black v. Crowther, 74 Mo. App. 480), must be read in connection with this opinion.

Briefly stated, the facts in judgment here are these:

Lorenz Feger owned a farm in Audrain county, comprising about one hundred and twenty-eight and one-half acres. A public road ran through the farm, leaving eighty-eight and one-half acres on the north side of the road, and forty acres on the south side of the road. In December, 1899, he gave Hopkins and Ricketts, real estate brokers in Mexico, verbal authority to sell the land for him for four thousand dollars. His health being then poor, he went to a sanitarium in St. Louis for treatment. Hopkins and Ricketts sold the eighty-eight and one-half acres, lying north of the road, to one Hill for three thousand dollars and notified Feger thereof. Instead of writing direct to the agents in answer to their letter, Feger on December 31, 1899, wrote to his nephew, William Dawson, who lived in Audrain county, saying that he had a letter from Hopkins and Ricketts telling him that they had a buyer for the eighty-eight and one-half acres, for three thousand dollars, and directing him to go to them and have them sell. On receipt of this letter Dawson went to see Hopkins and Ricketts, with the result that they made out a deed from Feger to Hill for the eighty-eight and one-half acres and sent it to Feger to be executed. He exe-

cuted it, and sent it to Hopkins and Ricketts, but they sent it back to him to be re-acknowledged, which he did, and sent it back to them. In this first letter aforesaid the testimony shows that there was also enclosed a letter from Feger to Hopkins and Ricketts. This letter was shown to be lost, but its contents were shown by parol evidence to be, in substance, "I am glad you have sold the eighty-eight acres; now sell the forty." Accordingly, on January 5, 1900, Hopkins and Ricketts sold the forty acres to the plaintiff herein, for one thousand dollars, of which fifty dollars was then paid to them, and they executed and delivered to the plaintiff a receipt therefor, which recited the sale, the purchase price, the name of the purchaser, and a full description by metes and bounds of the forty acres. On the same day Hopkins and Ricketts wrote to Feger, at St. Louis, saying: "We have sold the forty acres on the south side of the road for one thousand dollars. This completes the sale of the whole tract for four thousand dollars," etc. The name of the purchaser was not stated, and the above was the only description of the land given. The letter asked whether they should send him a deed for execution or whether he would be at home in a few days. In answer they received a letter dated St. Louis, January 6, 1900, addressed to them saying: "I am just in receipt of your favor of the 5th inst., regarding the sale of the forty acre tract. In reply would say as follows: Have deed made out and send to me for signing, as I can not say definitely when I will return to Mexico," etc. The parol testimony shows that this letter was written and Feger's name signed thereto by a man named Lee, with whom Feger was intimate at the sanitarium. Lee testified that he wrote it at Feger's request, as his amanuensis, and signed Feger's name to it at his direction, and then read it over to Feger before mailing it, as he likewise did other letters for Feger, he being sick. On January 8th, Hop-

kins and Ricketts wrote to Feger, saying, *inter alia*, that they enclosed a deed for him to execute to the forty acres, and that the purchaser wanted an abstract of the title, and as they had turned over the abstract to the whole farm to Hill, the purchaser of the eighty-eight and one-half acres, they would make an abstract to the forty acres, for half price.

Feger never executed the last-named deed, nor did he answer the letter enclosing it, but without any notice to Hopkins and Ricketts, on January 16, 1900, he sold the forty-acre tract to his wife's nephew, the defendant Fecht. Shortly afterwards Feger died, and this proceeding was begun against his estate to recover the fifty dollars and also four hundred dollars damages for breach of contract of sale.

Two questions are presented for adjudication: First, had Hopkins and Ricketts written authority to bind Feger to the contract of sale to the plaintiff so as to answer the requirements of the Statute of Frauds, in this State; second, if they had not, did Feger ratify their unauthorized contract of sale to the plaintiff?

I.

Had Hopkins and Ricketts written authority to bind Feger to the contract of sale to the plaintiff, so as to answer the requirements of the Statute of Frauds? The controversy here involved arose since the passage of the act of 1887 (Laws 1887, p. 195), which is now section 3418, Revised Statutes 1899, and therefore it is controlled by that law.

Prior to the passage of that act it had been held in this State that the authority of an agent to sign a contract for his principal for the sale of land need not be in writing, but might be conferred by parol. That statute was an amendment to the Statute of Frauds by adding to the then existing law. The law then provided that no action should be brought to charge any person upon any contract for the sale of lands, unless

the contract was in writing "and signed by the party to be charged therewith, or some other person thereto lawfully authorized." The amendment added the words, "And no contract for the sale of lands made by an agent shall be binding upon the principal unless such agent is authorized in writing to make such contract."

Since the passage of that amendatory act, it has uniformly been held that it is necessary to show that the agent had written authority "to make the contract which he does make." [Hawkins v. McGroarty, 110 Mo. 546; Roth v. Goerger, 118 Mo. 556; Fox v. Courtney, 111 Mo. 147; Greening v. Steele, 122 Mo. 287.]

There is no serious controversy as to this feature of this case. But it is said that the written authority shown in this case does not measure up to the requirements of the Statute of Frauds, in this, that it consists solely of the lost letter that Feger wrote Hopkins and Ricketts when he returned to them the first defectively acknowledged deed to Hill for the eighty-eight and one-half acres, and that said letter only said: "I am glad you have sold the eighty-eight acres; now sell the forty," and that the land to be sold is not described specifically enough on its face to be identified, nor is there anything on its face which refers to any other description which makes it specific enough for identification by such other written extrinsic evidence.

In Fox v. Courtney, 111 Mo. 1. c. 150, MACFARLANE, J., speaking for this court, referred to the rule laid down by Browne on the Statute of Frauds, and stated also in Fry on Specific Performance of Contracts, to the effect that the writing required by the statute, "must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties," and that, "it must, of course, appear from the memorandum what is the subject-matter of the defendant's engagement. Land,

for instance, which is purported to be bargained for, must be so described that it may be identified.''

The learned judge then added: ''While this certainty is required, the identification may sufficiently appear by reference to 'an external standard, and need not be in terms explained.' Thus a reference to deeds, conveying the same property, may be sufficient. But it will be found that the description of the land, when the subject-matter of the contract, must appear in the contract itself or from some reference in the contract to external matters by which it can be identified by extrinsic evidence. The description cannot be altogether supplied by parol. 'The writing must be a guide to find the land, must contain sufficient particulars to point out and distinguish the tract from any other.' ''

Accordingly an agreement in writing whereby the defendant had agreed to purchase of the plaintiff ''ground lying between Missouri avenue and Sixth street on the east side of Grand avenue,'' at a price therein stated, was held to be insufficient to bind the purchaser under the Statute of Frauds.

Tested by this rule, the letter aforesaid, which simply said: ''I am glad you sold the eighty-eight acres; now sell the forty,'' is wholly insufficient to constitute such a written memorandum of the contract of sale as would have bound Feger under the Statute of Frauds if he had signed it in person.

This being true, it logically and irresistibly follows that under the act of 1887, in order to bind the principal by the contract of his agent it must be shown that the authority given to the agent was in writing and was such authority as authorized the agent, in the language of the statute, ''to make said contract,'' meaning the contract sought to be enforced against the principal, or, in the language of this court in Hawkins v. McGroarty, supra, ''to make the contract which he does make.''

It would be solecism to hold that the principal would not be bound if he signed the contract himself, but that he is bound by the signature of his agent whose authority was no more specific than the contract upon which the principal could not be bound.

The written authority was wholly insufficient to identify the forty acres intended to be sold. And although both the principal and the agent may have understood that it was the forty acres of the principal's farm that lay south of the road, that fact lies wholly outside of the written authority and connot be added to it by parol. As was said by SHERWOOD, J., in Boyd v. Paul, 125 Mo. l. c. 14, "where your memorandum under the statute is *scant* in *measure* you can not *piece it out* by verbal additions."

It follows that Hopkins and Ricketts had no such written authority to make the contract of sale to the plaintiff as is required under the Statute of Frauds to bind Feger.

## II.

The only remaining question is, did Feger ratify the contract made by Hopkins and Ricketts?

In Hawkins v. McGroarty, 110 Mo. 546, the act of 1887 was considered by this court, and it was held that as the authority of the agent to bind the principal must, under that act, be in writing, so a ratification by a principal of a contract made by an agent who had no such written authority, must also be in writing, except where the principal was shown to have been guilty of such conduct as amounted to an equitable estoppel, which was held to be wanting in that case, as it is also in this case.

In that case, BRACE, J., speaking for this court, said: "The trial court ruled that the written authority must authorize the agent to make the contract which he does make, in order to bind the principal, and unless it does so the ratification thereof must be in writing

to bind him, citing Story on Agency (9 Ed.), sec. 242, and Despatch Line v. Mfg. Co., 12 N. H. 205, in which it was held that 'a ratification of an act done by one assuming to be an agent relates back, and is equivalent to a prior authority. When, therefore, the adoption of any particular form or mode is necessary to confer authority in the first instance, there can be no valid ratification except in the same manner.' "

The learned judge then pointed out that at common law where a contract was required to be under seal, the authority of an agent to make such a contract was required to be under seal. And it was further pointed out that it is held in other jurisdictions that where the authority of an agent to act was required to be in writing, a ratification of an act of an agent not so appointed, must also be in writing. And accordingly it was held that as our statute requires the authority of an agent to bind a principal to a contract for the sale of lands to be in writing, so a ratification of the act of an agent not so authorized must be in writing. The same rule was laid down in Roth v. Goerger, 118 Mo. 556.

The written ratification relied on in this case is the letter of Hopkins and Ricketts to Feger dated January 5, 1900, in which they said: "We have sold the forty acres on the south side of the road for one thousand dollars. This completes the sale of the whole tract for four thousand dollars," and asking whether they should send him a deed to be executed or whether he would soon be home, and Feger's reply to Hopkins and Ricketts dated January 6, 1900, saying: "I am just in receipt of your favor of the 5th inst., regarding the sale of the forty acre tract of land. In reply would say as follows: Have deed made out and send to me for signing, as I can not say definitely when I will be able to return to Mexico."

What is hereinbefore said with reference to the certainty required in conferring written authority

upon an agent applies with equal force to a ratification. As so measured the ratification relied on fails to fill the requirements of the law.

In addition to this, when Hopkins and Ricketts sent Feger a deed to be executed they notified him that the purchaser, the plaintiff herein, whose name for the first time was disclosed, wanted an abstract of the title, and as they had given the abstract to Hill, they would make another for half price. This varied the terms of the sale, and required Feger to pay for making the abstract of the title, and diminished by that much, the one thousand dollars, which were to be paid for the land. Feger was not obliged to carry out any such altered contract. Yet it is sought in this action to make his estate liable for damages for not so doing.

The Court of Appeals reached the right conclusion in this case and proceeded upon correct principles of law. The case of Black v. Crowther, 74 Mo. App. 480, did not involve the same questions that are adjudicated in this case. That case was whether a parol acceptance by the principal of a written proposition to buy or sell an interest in land was good, in a case where the acceptor brought suit for damages for breach of contract by the other party who had signed the written proposal. That case therefore has no bearing upon this case, and need not be further considered here.

For these reasons the judgment of the circuit court is reversed.

All concur, except *Robinson, J.,* absent.