Gerald **TESSLER** (Plaintiff), Respondent,

v.

John W. **DUZER** (Defendant), Appellant.

No. 29819.

St. Louis Court of Appeals.

Missouri.

Jan. 7, 1958.

Motion for Rehearing or to Transfer to
Supreme Court Denied Feb. 7, 1958.

Gerald Cohen, St. Louis, for appellant.

J. Leonard Kline, St. Louis, for respondent.

MATTHES, Judge.

Action on quantum meruit.

Tried before the court and a jury, plaintiff obtained a verdict for $1,000, and from the judgment entered thereon, defendant appealed to this court. The first and principal point on appeal is whether defendant's motion for a directed verdict at the close of plaintiff's case and again after all evidence

was in, should have been sustained. In resolving this question we consider the evidence in the light most favorable to plaintiff, giving to him the benefit of all favorable inferences, and disregarding defendant's evidence except insofar as it may aid plaintiff's case.

The petition pleaded that at the special instance and request of defendant, plaintiff rendered services in "setting up, displaying, stocking, selling and general managing and operating of a certain retail furniture and appliance business located at 3749 South Grand, St. Louis, Missouri, * * * commencing July 18, 1955, and terminating September 14, 1955, a period of eight (8) weeks and three (3) days"; that the reasonable value of the services was $150 per week.

In his answer defendant denied the foregoing allegations, and affirmatively averred that plaintiff and defendant entered into an oral agreement whereby plaintiff was to work for defendant in a retail store operated by defendant; that plaintiff was to receive thirty-five per cent of the net profits realized from the operation of the store; that plaintiff terminated "his employ of his own choice * * * September 14, 1955"; that no profits had been realized by defendant and under the contract plaintiff was entitled to nothing.

It·is disclosed by the record that on July 18, 1955, plaintiff began working for defendant in a new enterprise to be known as "Discount House." When asked at the outset of the direct examination whether there was an agreement between plaintiff and Mr. Duzer at the time he started working, plaintiff replied: "No. The only agreement that we had arrived at was the .fact that we were going to have an agreement reduced to writing, in which I was to receive thirty per cent of the profits, and also I made it clear at that time that I had no other income, had not saved any savings to sustain me during any lengthy period of time because of the fact that what money I had made prior to that had gone into my additional education." Again plaintiff testified there was no definite agreement as to the "draw" he was to receive, "but he (defendant) understood that I would have to have something to tide me through until we could make the final determination as to the profits." Plaintiff was emphatic in stating that after he began working, he requested the defendant "on many occasions" to have the agreement written, and that the defendant promised to have his lawyer prepare a "rough sketch * * * so that we could go over it and hash it out and make sure that what we both wanted was in there * * *." Not only was there no agreement as to the amount plaintiff was to be paid weekly in the nature of a drawing account, but according to his positive testimony there was neither discussion nor agreement with regard to these matters which plaintiff considered necessary factors or terms to be embodied in the ultimate contract between the parties: (1) whether plaintiff's thirty per cent was to be computed on net or gross profits; (2) whether defendant would eventually be paid a salary and be reimbursed for expenses; (3) whether plaintiff was to be reimbursed for expenses incurred in use of his automobile; (4) duration of contract; (5) vacation privileges for plaintiff.

On September 15, 1955, matters came to a head, when defendant, in response to another demand by plaintiff for a "draw" offered to pay plaintiff $20 per week. In plaintiff's words, "I could not possibly exist on that, assuming * * * I ran my car to get there, used the car sometimes for the business, and normal operating expenses, I couldn't get by on that, and I told him I had to have a bigger draw." When defendant refused to accede to this request, plaintiff terminated the relationship by leaving the place of business.

Since no point is raised with regard to work performed by defendant or the sufficiency of the evidence to support the amount of the judgment if it is determined that defendant was entitled to recover on

quantum meruit, there is no necessity for reviewing the evidence pertinent to the nature and extent of the services performed. Suffice to say there is testimony in the record establishing that for a period when plaintiff was still attending the universtiy, he worked approximately seventy hours a week, and after his schooling had been completed, he worked approximately one hundred hours a week; he worked a total of eight weeks and three days and his services were reasonably worth $150 per week.

The theories of the parties were embodied in instructions one and two. By instruction one the jury was informed that upon a finding that plaintiff had rendered services for defendant at his special instance and request "then in the absence of any contract or agreement between said parties to the contrary, the law will imply a promise from said Defendant to pay to plaintiff for such work and labor what the same are reasonably worth, and if you further find and believe from the evidence that Plaintiff, between July 18, 1955, and September 14, 1955, did perform labor and service for said Defendant, and there was no contract between Plaintiff and Defendant that said services should not be paid for, or that a certain agreed price should be paid therefor, then your verdict should be for the plaintiff for such amount." etc. Instruction two told the jury that if they found plaintiff's services were rendered pursuant to a contract whereby defendant was to pay plaintiff thirty per cent of the profits realized in the operation of the business to December 31, 1955, then plaintiff was not entitled to recover in excess of that amount, and this was true even though the jury found such services were worth more than thirty per cent of the profits.

To sustain the contention that a submissible case was not made, defendant insists that by plaintiff's own testimony, it was conclusively established that the services rendered were performed under and pursuant to an express contract that fixed plaintiff's remuneration at thirty per cent of the business profits; that plaintiff could not ignore the contract and seek recovery on another theory. Plaintiff counters by asserting that the undisputed facts fall short of establishing a valid and enforceable express contract; that since the law implies a promise on defendant's part to pay the reasonable value of plaintiff's services the question became one for the jury to pass on.

■ We are convinced, in view of the applicable legal principles which shall presently be considered, that the undisputed and uncontroverted facts failed to establish as a matter of law, that plaintiff performed services for the defendant under and as the result of an existing express contract between the parties; consequently it must follow that the court properly ruled the defendant's motion for a directed verdict.

■ The essentials of a valid and enforceable contract are well defined. The "parties must have a distinct intention, common to both, and without doubt or difference." Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 124 S.W.2d 1111, 1116(8); Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 614(3). As stated in 17 C.J.S. Contracts § 31, "Until all understand alike, there can be no assent, and, therefore, no contract." The "parties must assent to the same thing in the same sense and their minds must meet as to all the terms." Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062(8); Shofler v. Jordan, supra; Bearup v. Equitable Life Assur. Soc. of U. S., 351 Mo. 326, 172 S.W.2d 942, 945. For a contract to be valid and enforceable, the nature and extent of its obligations must be certain, 17 C.J.S. Contracts § 36c; Hutting v. Brennan, supra, or, as stated by the court in the Shofler case, supra, 284 S.W.2d loc. cit. 614, "be * * * capable of being rendered certain through application of the ordinary canons of construction or by reference to something certain." If the essential terms of the contract are reserved for future determination of

**4**

the parties, there can be no valid agreement. Brown v. Childers, Mo.App., 254 S.W.2d 275, loc. cit. 281 and cases there cited.

As we view the instant situation the foundation and nothing more was laid for a valid contract. There was no mutual assent as to other essential terms and conditions to guide the parties in the proposed business venture. The foundations, i. e., the provision that plaintiff was to receive thirty per cent of the profits, without more, did not make a complete, understandable, valid and workable contract. Here, according to plaintiff's testimony, the amount of his weekly allowance or draw; the formula to be used in determining the amount of profit; the duration of the contract; the questions of vacation benefits, and expenses incurred by plaintiff in use of his automobile, were matters not only to be resolved but which constituted essential component parts of the ultimate contract. Absent a meeting of the minds on these vital terms, there was no contract.

█ Inasmuch as there was no express contract, the law implies a promise on the defendant's part to pay for the beneficial services rendered by plaintiff, American Displays v. E. T. Swiney Motors, Mo.App., 240 S.W.2d 732, 735; Christine v. Luyties, 280 Mo. 416, 430, 217 S.W. 55, 60; Swift v. Johnson, 175 Mo.App. 660, 665, 158 S.W. 96; Kolb v. Howard Corp., Mo.App., 219 S.W.2d 856, 858; Songer v. Brittain, Mo. App., 272 S.W.2d 16; 58 Am.Jur. Work and Labor, §§ 4 and 39; 98 C.J.S. Work and Labor § 11b, and the recovery in quantum meruit was supported by ample proof.

The final contention challenges the action of the court in giving instruction one, which, as already pointed out, authorized a verdict for plaintiff on the theory of quantum meruit. The sole claim of error is that there was "no evidence introduced to warrant such an instruction." In elaborating on this assignment defendant again argues that the evidence ˙ foreclosed the

right to recover on the theory of an implied contract, or in quantum meruit. Our conclusions with respect to defendant's first point apply to and dispose of the contention that the instruction was improper.

For the reasons herein set forth the judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.