**AUSTIN & BASS BUILDERS, INC.,**
**Respondent,**

v.

**Lawrence E. LEWIS and Ethel I. Lewis,**
**Appellants.**

**No. 49168.**

Supreme Court of Missouri,

En Banc.

July 16, 1962.

Motion for Rehearing Denied
Sept. 10, 1962.

Lucian Lane and W. M. Thurman, Kansas City, for appellants.

Terry & Welton, Jack C. Terry and Gaylord Wilkins, Kansas City, for respondent.

EAGER, Judge.

This case was transferred here upon our order from the Kansas City Court of Appeals. Its opinion is reported at 350 S.W.2d 133. In that opinion the court affirmed a judgment for plaintiff in the sum of $6,000. The suit is one against a husband and wife for the breach of an alleged real estate contract. The instrument was dated April 8, 1959, and it recited the parties as "Lawrence E. Lewis and Ethel I. Lewis (Husband and Wife)" as sellers and "Austin & Bass Builder Inc." as buyer; it was signed only by Lawrence E. Lewis, individually, and Kenneth Bass, individually. The property involved consisted of lots "9 thru 28 and 30 thru 34, Woodridge Subdivision, Independence, Missouri." The contract recited a price of $31 per front foot, the making of a $1,000 deposit with sellers, and it contained the following provisions (among others): " * * * the balance to be paid in the following manner: Four Thousand and No/100............Dollars $4,000.00 cash on delivery of deed as herein provided, and starting of improvements. Balance shall be paid at the rate of $31.00 per front foot at the closing of loan on constructed houses less $200.00 per lot which is the consideration paid in the down payment. The above sale is contingent on the approval of the Federal Housing Administration and all improvements in including streets, water, Gas and Sewers to the property line.

"All deferred payments to be represented by note___, secured by deed of trust or mortgage on above described property containing usual provisions, drawing interest from date of deed on the terms specified above." The contract was admittedly prepared by Mr. Bass, a layman.

Mr. Lewis had been a builder of houses for 15 years; he had an eighth grade education, and had never attempted to write a real estate contract. His wife assisted to some extent in the business; she usually drew the checks, and also acted as bookkeeper, with some outside help; she had authority to sign checks, although the bank account was carried in the name of "Lawrence E. Lewis, Contractor." Lewis and his wife owned 40 acres of land at 39th and Noland Road in Independence and from this they had platted the subdivision in question. Bass and his partner Austin heard that Lewis had lots for sale and contacted him in March or early April 1959 on one or more occasions. While there is much controversy, generally, concerning all of their dealings, the parties did agree on a price per front foot for lots to be sold. Lewis testified that they offered to buy ten lots and make a deposit of $200 per lot on 15 more. On April 8, Mr. Bass appeared with the instrument in question which (for convenience but without assumption of validity) we shall call the contract. When Bass testified, he gave little or no explanation of what then occurred, except that the contract was signed; Lewis testified that the instrument did not represent the agreement they had previously discussed, that he so stated, and that he could not understand it; that he merely signed it at the insistence of Bass, who wanted something to show to a loan man who was to examine the property on the next day, and who said that they would get up a new contract within the next week. No one ever presented the contract to Mrs. Lewis for her signature or approval. Bass and Austin formed the plaintiff corporation after the date of the contract, its certificate of authority being dated April 29, 1959; at its first meetings the directors approved this contract. Bass testified that Lewis was told of the pending incorporation during the early negotiations.

After April 8, no new contract was prepared; according to Lewis the whole deal was still uncertain, including the number of lots to be purchased and the mode of payment. Bass had sundry dealings with the FHA, with material men, and loan agencies; he paid a fee on an application for ten FHA commitments; Lewis went with Bass to interview the FHA, and looked over certain "plot plans"; certain engineering work was performed, partly for Bass and partly for Lewis. Bass had some house plans prepared by an architect. Lewis proceeded to put in streets, curbs, sewers, gas and water, incurring very substantial expense, allegedly nearly $30,000. All subdivision expense was paid by Lewis. At the end of July, no further specific steps had been taken to consummate the contract, either by tenders of additional money, a deed of trust or a warranty deed, and no abstract of title had been furnished. On July 30, Lewis contacted Bass concerning a letter from the FHA setting up certain additional requirements for the subdivision. At that time Lewis evidently told Bass that he might have to refinance the tract with a new deed of trust (there being an existing balance of some $5,000 on an old one); Bass testified that Lewis then said that if he did so he could not give clear title. Thereupon plaintiff's counsel wrote a letter to Lewis threatening suit. Further conferences were held in August, sundry proposals discussed, but nothing agreed upon. A controversy developed or continued, over the mode of payment and the security to be given, pending final FHA loans on completed houses. Bass testified that Lewis, and Mrs. Lewis, then required all cash. Mrs. Lewis denied taking any part, and Lewis testified that he only required a down payment and "a mortgage on the lots until they are paid for." The vagueness of the whole deal is well illustrated by Bass's testimony that,—"* * * we would only sign a deed of trust on the first ten lots because that(s) all we would get title to when we took over." He so testified despite the fact that the contract for which plaintiff now seeks damages called for the sale and conveyance of 25 lots. . On July 30, Mrs. Lewis, at her husband's direction, had

mailed a check to Bass returning the $1,000 deposit, but she had forgotten to sign the check. This check was brought by Bass or Austin to one of the August conferences, was apparently left on the table in a restaurant, and was subsequently delivered to Lewis by the restaurant manager. This suit was filed in September. On January 10, 1960, after suit, a $1,000 cashier's check was sent by the Lewises to Bass, which was endorsed by the plaintiff corporation and deposited in its account. Incidentally, the ten FHA commitments issued for Bass were transferred by him to other lots which he subsequently purchased, and were there used. He testified that each of those lots cost him $610 more than the price fixed in the present contract.

Lewis did refinance the entire 40 acres with a loan of $40,000. His testimony and his theory was and is that he could always release any lot upon payment to the mortgagee of $1,250, which he did on some lots for his own purposes; also, that he was and had always been willing to convey the lots upon the down payment called for and a deed of trust on all lots conveyed. Apparently one chief bone of contention was that plaintiff could not get an FHA loan if there was a pre-existing deed of trust on the property. Under the view we take it will not be necessary to go into all the claims of performance and nonperformance, pro and con. So far as Mrs. Lewis was concerned, plaintiff relied solely upon the theory of agency and ratification,—i. e., that her husband was her agent in signing the contract, that she knew (or soon learned) of it, that she was present at some of the discussions, and that she deposited or drew the checks involved.

The amended petition was in three counts. All were based solely upon the written contract. The first, reciting that defendants had failed and refused to perform the contract, sought the return of the $1,000 deposit with interest, apparently by way of rescission. That count was dismissed at the trial, plaintiff having already accepted the return of the deposit. The second count recited an offer to sell the lots for $58,587.-21, the execution of the written contract (attached as an exhibit), performance by plaintiff, the failure of defendants to perform by conveying the property, and plaintiff's special damages. The third sought punitive damages for the allegedly malicious and fraudulent acts of defendants in placing a $40,000 deed of trust on the tract after plaintiff had expended effort and money in reliance on the contract, thus allegedly rendering performance impossible. The trial court refused to submit any issue of punitive damages. The case was tried and submitted solely upon the theory of a joint liability of both defendants,—based upon Lewis's agency in the execution of the contract and knowledge and ratification by Mrs. Lewis thereafter.

Sundry points are briefed, and controverted, in the submission here. Most of these will not require our consideration. The evidence showed, the contract recited, and the whole theory of trial was that the title to this property was held by defendants as an estate by the entirety. It is entirely clear that a deed by one of two tenants by the entirety conveys nothing. Mahen v. Ruhr, 293 Mo. 500, 240 S.W. 164; Samuel v. Frederick, Mo., 262 S.W. 713; Baker v. Lamar, Mo., 140 S.W.2d 31; Stewart v. Shelton, 356 Mo. 258, 201 S.W.2d 395. Indeed, it has been said that a deed by one of the tenants alone is void. Mahen, Samuel, supra. If one tenant may not bind the other by a deed it is obvious that one may not bind the other by a sole contract, unless the contract is authorized by the other in the form required by law.

The Missouri Statute of Frauds, § 432.-010, RSMo 1959, V.A.M.S. provides in part: "No action shall be brought * * * upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, * * * unless the agreement upon which the action shall be

brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Defendants here denied in their answers that Mrs. Lewis signed the purported contract (which amounts to a denial of its validity), and objections based on the Statute of Frauds were raised at the trial at every available opportunity. Under these circumstances defendants may rely upon the statute. Jones v. Linder, Mo., 247 S.W.2d 817, 819. In fact, plaintiff has not made any issue of this fact.

▆▆ There has been no contention by plaintiff that there were memoranda in writing, signed by Mrs. Lewis, which would satisfy the statute. As stated, plaintiff relies on her supposed knowledge, acquiescence and ratification. The law seems clear in Missouri that the statute means just what it says when it requires the authority of an agent in a "contract for the sale of lands" to be in writing. Johnson v. Fecht, 185 Mo. 335, 83 S.W. 1077, 1079; Wussler v. Peterson, Mo., 270 S.W.2d 12; Hunt v. U. S. Fire Insurance Co. of New York, 239 Mo.App. 625, 193 S.W.2d 778; State ex rel. Sears, Roebuck & Co. v. Haid, 332 Mo. 701, 60 S.W.2d 41; Bokern v. Loud, Mo. App., 108 S.W.2d 1049. And these cases clearly indicate that the same rule, i. e., the necessity of a writing, applies to a ratification as well as to an original authorization.

▆▆ The Court of Appeals has held that the "agreement to convey, though invalid to affect the title to real estate in whole or in part, may yet be valid between the parties as a basis for the recovery of damages * * *." We cannot assent to that statement. The following Missouri cases lay down the rule that if a contract is insufficient to support a suit for specific perform-

ance because in contravention of the Statute of Frauds, a party thereto cannot recover damages for its breach. Jones v. Linder, Mo., 247 S.W.2d 817, 825; State ex rel. Fletcher v. Blair, 352 Mo. 476, 178 S.W.2d 322, 325; Jesse v. O'Neal, 364 Mo. 333, 261 S.W.2d 88, 90; Gipson v. Fisher Bros. Co., Mo.App., 204 S.W.2d 101, 105; Marshall Realty Co. v. Zerman, Mo.App., 296 S.W. 1057. In State ex rel. Fletcher v. Blair, supra, this court said, at 178 S.W.2d loc. cit. 325: "If the statute of frauds did apply to the oral two-year lease then the plaintiff tenant could not recover compensatory damages for the second year, either on the theory of breach of contract *or* in tort. On the contract theory this Court and two of the Courts of Appeals have ruled that when a contract is voidable under the statute of frauds, and therefore unenforceable by specific performance in equity, the alternative is not open to the injured party to sue for breach of contract. * * *" And in Jones v. Linder, supra, this court also said, at 247 S.W.2d loc. cit. 825: "The second count of plaintiffs' petition was for damages for breach of the verbal contract. Certainly, if the verbal contract may not be specifically enforced, the statute also bars any action by plaintiffs to recover damages for a breach of that contract. * * *"

▆▆ On this vital question plaintiff urges, in substance, that "equity will not permit the statute of frauds to act as a shield for fraud * * *," citing: Jones v. Linder, Mo., 247 S.W.2d 817; Carlin v. Bacon, 322 Mo. 435, 16 S.W.2d 46, 69 A.L. R. 1; Gates Hotel Co. v. C. R. H. Davis Real Estate Co., 331 Mo. 94, 52 S.W.2d 1011; Bick v. Mueller, 346 Mo. 746, 142 S.W.2d 1021; Gipson v. Fisher, Mo.App., 204 S.W.2d 101. The first and most obvious answer to this argument is that this suit is not one in equity, and is not claimed to be such. Our Code does not eliminate the basic distinctions between law and equity. Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473; Kesinger v. Burtrum, Mo.App., 295 S.W.2d

605. The two counts on which plaintiff went to trial were solely for damages. Of the cases cited, we observe the following: Carlin, was a suit in equity to declare and establish the status of a child under an oral contract of adoption, and the court held that the failure to adopt and the treatment of the child constituted a fraud. Gates Hotel Company, was a suit in equity to establish a trust ex maleficio upon a widely recognized ground of equitable jurisdiction. Bick, involved the specific performance of an oral contract to convey real estate in return for the rendition of personal services during the grantor's life, which agreement had been fully performed by the proposed grantee. Gipson, merely held that where a landowner had availed himself of the Statute of Frauds to oust a tenant working on shares, the latter might maintain a suit in quantum meruit for his services. In that case it was specifically recognized that a suit might not be maintained for a breach of the contract which was unenforceable under the Statute. That rule was also specifically recognized in Jones v. Linder, Mo., 247 S.W.2d 816, the other case cited. In Jones, the plaintiffs sought specific performance of an alleged contract for the sale of real estate or, in the alternative, damages. The defendant wife had refused to sign a deed. All relief was denied there except restitution, and the court merely held, in substance, that equity will sometimes intervene to prevent a "gross injustice or deepseated wrong," which is necessarily "something more than the failure of one to live up to his oral agreement," or "the loss of prospective ownership * * *." These cited cases fall within recognized grounds of equity jurisdiction. The plaintiff here has elected to sue for damages. No question of fraud or unfair dealing was submitted to the jury, and we rule on the case as tried and submitted. We do not mean to indicate, however, that the facts in this case would support a suit in equity for specific performance. See, for instance, the requirements stated in Jones v. Linder, supra.

 Defendants suggest that the contract, signed by the husband alone, was void even as to him. See, Mahen v. Ruhr, 293 Mo. 500, 240 S.W. 164; Samuel v. Frederick, Mo., 262 S.W. 713. So far as the effectiveness of the contract is concerned, that is true. We are not specifically concerned with that question, for the case was tried and submitted solely on the theory of a joint liability for damages, and we hold that there could be none. In view of our ruling it would be superfluous to consider the sundry other questions briefed, one of which is that the contract was so uncertain in its terms and so lacking in mutuality as to be void.

The judgment is reversed with directions to enter judgment for the defendants.

All concur.