481 F.Supp. 1233 (1979)
William F. KOEDDING, August F. Koedding, III, Plaintiffs,
v.
George T. SLAUGHTER, Defendant.
No. 79-50C(2).
United States District Court, E. D. Missouri, E. D.
December 26, 1979.
*1234 William E. Buckley, Kenneth C. Brostron and Amy Rehm Hinderer, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for plaintiffs.
Robert F. Ritter (Local), Gray & Ritter, St. Louis, Mo., E. Ben Franks, Arnold, Arnold, Lavender & Rochelle, Ltd., Texarkana, Ark., for defendant.

*1235 MEMORANDUM
NANGLE, District Judge.
Plaintiffs brought this suit pursuant to 28 U.S.C. § 1332 seeking to recover damages for defendant's alleged breach of a contract to purchase plaintiffs' real estate. Defendant has denied the existence of an enforceable contract and, in the alternative, counterclaimed alleging that plaintiffs breached the contract.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiffs William F. Koedding and August F. Koedding, III are residents of the State of Missouri.
2. Defendant George T. Slaughter is a resident of the State of Arkansas.
3. During the course of the transactions relevant to this litigation, plaintiffs were, together with other members of their family, the owners of a Holiday Inn in Rolla, Missouri. Plaintiffs were orally granted authority by all members of their family having an interest in this Holiday Inn to negotiate its sale.
4. Some time prior to April of 1978, John Jones of the realty firm of McRoberts and Company of Columbia, Missouri heard that plaintiffs were interested in selling the Rolla Holiday Inn. Jones contacted plaintiffs to ascertain the terms on which plaintiffs were willing to sell.
5. Jones then contacted defendant as a possible purchaser. Defendant was interested in the property and, through McRoberts and Company forwarded a proposal dated April 17, 1978 and signed by himself to plaintiffs.
6. Substantially all contact between the parties was made through McRoberts and Company. Though both John Jones and A. J. McRoberts testified that they were acting as plaintiffs' agents in the transaction, a more realistic appraisal of their positions is that they were middlemen, acting on behalf of all parties.
7. This proposal was rejected by plaintiffs mainly because the sixty day contingency period in which to obtain financing was considered too lengthy. Several changes were made in defendant's proposed contract, and the parties executed a document entitled "Real Estate Contract" on May 10, 1978.
8. This contract provided for the sale of the Rolla Holiday Inn by plaintiffs to defendant for a price of one million two hundred thousand dollars ($1,200,000.00). At the time of the execution of this contract, defendant deposited ten thousand dollars ($10,000.00) with McRoberts and Company as earnest money.
9. This earnest money was to be credited to the purchase price, but in the event of a breach by defendant,
. . . then the money deposited as aforesaid shall be paid over to the seller as liquidated damages, actual damages being impossible to ascertain, and this agreement may or may not be thereafter operative, at the option of the seller. If the aforesaid money deposited is paid over by the buyer, then it shall be divided equally between the seller and the said named agent for the seller, provided, however that the said agent shall in no event receive any sum of money for his services greater than the amount hereinafter mentioned for commission.
10. The contract was signed by plaintiffs as sellers and defendant as buyer. Defendant initially planned to purchase the hotel with another investor, but that investor backed out of the deal when he considered the hotel's occupancy rate to be far too low. That partner's existence was apparently unknown and unimportant to plaintiffs.
11. The contract described the real estate involved as follows:

*1236 HOLIDAY INN OF ROLLA, land and buildings located on Martin Spring Drive in the the City of Rolla, County of Phelps, Missouri, . . .
12. The contract left for future negotiations such incidental matters as food and liquor supplies, accounts receivables, etc., with the following language:
This contract, in addition to the contingencies later stated, is subject to an agreement to be worked out by buyer and seller which will contain the details of the ultimate sale.
Plaintiffs subsequently prepared a detailed contract which included provisions for all these items. This document was never executed by the parties.
13. The contract was contingent upon defendant's obtaining a loan or loan commitment and a commitment for a new Holiday Inn franchise within thirty days. Closing was to occur within sixty days, or by July 9, 1978.
14. Plaintiffs were to deliver an abstract of title to the office of McRoberts and Company within ten days, and were to furnish defendant an inspection report from Holiday Inns no older than sixty days.
15. Within the ten days of the signing of the contract, plaintiffs had obtained the title abstract, and contacted McRoberts and Company concerning its delivery. Plaintiffs were reluctant to send the abstract through the mail, and suggested sending it via Greyhound Bus. The realtors, however, were uncertain as to whether the abstract should have been delivered to them in Columbia, Missouri or to the title company in Rolla. A final decision was never reached as to where to send the abstract, and, consequently, plaintiffs never sent it anywhere.
16. Defendant never requested of either plaintiffs or McRoberts and Company that the abstract be delivered.
17. Plaintiffs furnished defendant an inspection report approximately ten months old, and never furnished a more recent report as required by the contract. This report is the result of a periodic inspection by a Holiday Inn representative, and does not go into great detail. A much more detailed deficiency report is required before Holiday Inn will issue a franchise.
18. Defendant had obtained a verbal loan commitment prior to the execution of the contract. However, neither a written loan commitment nor a commitment for a Holiday Inn franchise were obtained within thirty days of May 10, 1978.
19. Around the middle of June plaintiffs inquired of McRoberts and Company whether the contract was off due to these unfulfilled contingencies. McRoberts and Company relayed this concern to defendant, and defendant, in response, sent plaintiffs a telegram on June 16, 1978 stating that he waived all contingencies. Prior to this time, on or about June 13, 1978, defendant had obtained a written loan commitment from Community Federal Savings & Loan Association in St. Louis, Missouri. Defendant had not yet applied for a Holiday Inn franchise.
20. Sometime between June 16, 1978 and the expected closing date of July 9, 1978, defendant obtained a Holiday Inn franchse application. This application was quite detailed and it was apparent to defendant that the franchise application could not be completed by the closing date. Defendant asked plaintiffs for additional time in which to obtain the franchise.
21. Plaintiffs were concerned about the seriousness of defendant's offer. Sometime prior to July 26, 1978 they acted upon this concern by requesting fifty thousand dollars ($50,000.00) in additional earnest money. This request was relayed to defendant through McRoberts and Company.
22. Defendant was unwilling to furnish the additional funds, and stated that the substantial monies already expended by him in obtaining the loan commitment and working on the franchise application should have been sufficient guaranty to plaintiffs of his seriousness. John Jones and A. J. McRoberts of McRoberts and Company also vouched for defendant's reliability to plaintiffs.
*1237 23. Nevertheless, plaintiffs demanded on July 26, 1978 that the additional earnest money be put up immediately or the deal was off. Defendant refused, and stopped work on the franchise application, considering the deal to have fallen through.
24. On or about August 4, 1978, defendant received a letter from plaintiffs stating, in substance, that defendant still had until August 9, 1978 to close the deal. No action was taken by defendant prior to August 9, 1978.
25. Plaintiffs were at all times between July 9, 1978 and August 9, 1978 ready, willing and able to close the real estate purchase. Defendant at no time tendered the purchase price to plaintiffs, and was at no time ready, willing or able to close the deal.
26. Plaintiffs eventually sold the Holiday Inn to Triple T Inns, Inc. for the price of one million dollars ($1,000,000.00). There is no evidence that a sales commission was paid by plaintiffs on this sale. Had the deal with defendant gone through, plaintiffs would have had to pay McRoberts and Company a sales commission of sixty thousand dollars ($60,000.00).
27. The offer by Triple T Inns, Inc. was the only such offer received by plaintiffs after the agreement with defendant fell through. The sales price was reasonable under the circumstances.
28. Plaintiffs were never informed by defendant of his intent to resell the property at the price of one million five hundred fifty thousand dollars ($1,550,000.00), or, in fact, of his intent to resell the property at all. Defendant expended approximately seven thousand dollars ($7,000.00) in actions taken pursuant to the contract between the parties.
29. The ten thousand dollars ($10,000.00) earnest money was not turned over to plaintiffs after the deal fell through. McRoberts and Company still holds this money.

CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332, the controversy being between residents of different states and the amount in controversy exceeding ten thousand dollars ($10,000.00). This Court having jurisdiction due to diversity of citizenship, and all relevant actions having occurred in Missouri, the cause of action is governed in its substantive elements by the law of Missouri. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
Defendant has raised numerous arguments as to why there was no enforceable contract; why, if there was such a contract, it was plaintiffs who breached; and why, if it was defendant who breached, plaintiffs' recovery is either limited or non-existent. Initially, plaintiffs argue that by counter-claiming for breach of a contract which defendant claims did not exist, defendant has ratified the contract. To support this contention, plaintiffs point to cases applying Missouri law. See King v. Moorehead, 495 S.W.2d 65 (Mo.App.1973); King v. Guy, 297 S.W.2d 617 (Mo.App.1956). It is clear, however, that defendant's right to plead and argue in the alternative is a matter of procedure and, as such, is governed by federal law. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).
Federal Rule of Civil Procedure 8(e) specifically allows a party to plead in the alternative. This right is not altered due to the fact that the case has been tried. Defendant is not in the position of arguing that something is both a fact and not a fact. Rather, he is arguing as to how the facts should be interpreted. Defendant's counterclaim, therefore, has not admitted the validity of the contract in question. Little v. Texaco, Inc., 456 F.2d 219 (10th Cir. 1972); Fidelity & Deposit Co. of Maryland v. Krout, 146 F.2d 531 (2d Cir. 1945).
Defendant raises three arguments in support of his claim that the May 10, 1978 contract was not binding and enforceable. These arguments will be dealt with seriatim. Initially, defendant argues that the description of the land in the contract was *1238 not sufficiently definite to satisfy the statute of frauds. This claim is clearly meritless.
The law in Missouri is clear that the contract itself need not fully and accurately describe the land involved; the writing need only furnish a sufficient description such that the parties may adequately identify the property. Macy v. Day, 346 S.W.2d 555 (Mo.App.1961); Ray v. Wooster, 270 S.W.2d 743 (Mo.1954). This principle is stated in Wilt v. Waterfield, 273 S.W.2d 290, 294 (Mo.1954):
The land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper, but the writing must afford the means whereby the identification may be made perfect and certain by parol evidence.
The description of the property involved in this litigation in the May 10, 1978 contract clearly meets this requirement.
Defendant also argues that the contract was incomplete and illusory and, therefore, unenforceable due to the provision leaving certain matters to future negotiations. The testimony clearly indicated that the provision was meant to deal with food and liquor supplies, inventories, accounts receivables and other such details.
Bogart Construction Company v. Lakebrink, 404 S.W.2d 779 (Mo.App.1966), dealt with a similar situation. In that case, plaintiff contracted with defendant to construct a home for defendant, subject to the parties reaching an agreement upon "plans and specifications `plus color and finish'". The court there held that no binding agreement was reached since the parties had not agreed upon essential terms. The court felt that the plans and specifications for the construction of a house were obviously one of the most significant elements.
Significantly, however, the court also indicated that leaving open for future negotiations certain details would not affect the validity of the agreement.
If the essential terms of the contract are reserved for future determination of the parties, there can be no valid agreement. Tessler v. Duzer, Mo.App., 309 S.W.2d 1, l.c. 3, 4. Color and finish may or may not, depending on the nature of the work and other circumstances in a given case, be essential items.
Application of this principle to the present circumstances clearly indicates that the "details" to be included in the final contract do not render the May 10, 1978 contract illusory. That contract dealt with the sale of real estate worth well over a million dollars. All that remained was good-faith negotiation on non-essential items. Therefore, the contract was not rendered unenforceable. Purvis v. United States, 344 F.2d 867 (9th Cir. 1965); Eckles v. Sharman, 548 F.2d 905 (10th Cir. 1977).
Finally, defendant argues that the May 10, 1978 agreement was unenforceable because not all persons with an interest in the property had signed the contract or had given plaintiffs authority in writing to negotiate the sale. The Missouri Statute of Frauds, § 432.010 RSMo 1969, provides, in pertinent part, as follows:
No action shall be brought * * * upon any contract for the sale of lands . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.
Even though plaintiffs did not have written authorization from the other members of their family to negotiate the sale of the property, this Court must conclude that the present suit is not barred by the Statute of Fraud.
It is clear that, had defendant brought this suit against all the owners of the property seeking to enforce the contract or to recover damages for its breach, the nonsigning members would be protected by the statute. Austin & Bass Builders, Inc. v. Lewis, 359 S.W.2d 711 (Mo.banc. 1962); McQueen v. Huelsing, 425 S.W.2d 506 (Mo. *1239 App.1968). In fact, it appears that defendant would not have even been able to recover damages from plaintiffs, who had signed the contract. See, Lewis, id. at 716.
However, that is not the posture in which this case arose. The Statute of Frauds is for the protection of the party who had not signed the contract. Shaffer v. Hines, 573 S.W.2d 420 (Mo.App.1978). This principle is aptly stated in Heaton Distributing Co. v. Union Tank Car Company, 387 F.2d 477, 482 (8th Cir. 1967), quoting from Restatement, Contracts § 211 (1932),
When a memorandum of an oral contract within the Statute [of Frauds] is signed by only one party to the contract and the Statute is not otherwise satisfied, the contract is enforceable against the party who has signed the memorandum but not against the other party.
Defendant is objecting that plaintiffs' authorization to act on behalf of all persons with an interest in the property was not in writing. This requirement of a writing is obviously for the protection of the non-signing principal. Since the non-signing principals have not sought that protection in this situation, the statute becomes irrelevant.
This principle was illustrated in Thrower v. Keltner, 358 Mo. 152, 213 S.W.2d 476 (1948). In that case, only one of the two owners of the property involved signed the sales contract, the other being of unsound mind. The buyers brought suit for specific performance against the signing party, after the non-signing party passed away. In rejecting the seller's argument that the contract was void, the court said, at 477,
Suppose, under the terms of the agreement, respondent had tendered to appellants a good deed and title and demanded the purchase price, could appellants have successfully defended on the ground that one of the parties of the first part had not signed? We think not.
The court then went on to state that the statute only required that the contract be signed by the person to be charged.
The present suit is, therefore, not barred by the Statute of Frauds. Defendant is "the person to be charged", and it is clear that he signed the contract in question. As to defendant's counterclaim for breach of the same contract, plaintiffs have not raised the bar of the statute, and, in any event, they obviously waived its protection by bringing this suit. Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068 (1943).
Defendant argues that the May 10, 1978 contract expired by its own terms when he had not obtained financing and a franchise within thirty days. Defendant argues that the telegram waiving all contingencies was ineffective since the contract had already expired. This argument is not persuasive.
Defendant relies upon Berger v. McBride & Son Builders, Inc., 447 S.W.2d 18 (Mo. App.1969), in which a similar argument was accepted by the court. In that case, however, the contract specifically stated that it was to be null and void if financing was not obtained by a certain date. The May 10, 1978 contract contained no such language, but merely said that the contract was contingent on those factors. In fact, the parties amended the April 16, 1978 draft originally sent to plaintiffs to strike out language which would have automatically nullified the contract after thirty days. Furthermore, it is clear from the parties' actions following June 9, 1978 that they still considered the contract valid.
It is clear that a party may waive a condition subsequent such as that presented in this case. Campbell v. Richards, 352 Mo. 272, 176 S.W.2d 504 (1944). It is also clear that consideration is not a prerequisite to the validity of such a waiver. Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F.Supp. 821 (S.D.N.Y.1969); 3A Corbin, Contracts, § 753 (Supp.1965). Defendant's telegram of June 16, 1978 was therefore effective to waive the conditions subsequent as to financing and obtaining a franchise.
Defendant argues that plaintiffs breached the contract by not furnishing a recent inspection report or an abstract of title. As to the title abstract, it is undisputed the *1240 plaintiffs obtained the abstract within ten days. They did not deliver it simply because they were unsure as to its destination. Furthermore, defendant did not request the abstract, and obtained a loan commitment without it. Under these circumstances, this Court must conclude that the failure to deliver the abstract was not a material breach of the contract.
This case does not present a situation where the sellers failed to deliver the abstract because they did not have good title. Cf. Rudisaile v. DeBeughem, 237 S.W.2d 166 (Mo.1951); Leath v. Weaver, 202 S.W.2d 125 (Mo.App.1947). While delivery of the abstract undoubtedly was necessary before the sale could be closed, there is no evidence that defendant was in any way harmed by not receiving the abstract within the ten days called for in the contract. Cf. Corley v. Kiser, 556 S.W.2d 218 (Mo.App. 1977).
A similar conclusion is dictated with respect to plaintiffs' failure to furnish defendant with a more recent inspection report. This report was not necessary to defendant's franchise application, and defendant does not appear to have been harmed by its absence. The absence of this inspection report did not become significant to defendant until this litigation. Plaintiffs' immaterial breaches with respect to these two matters will not, therefore, excuse defendant's non-performance.
Defendant argues that real estate transactions such as the one involved in this case rarely close on time and that plaintiffs' demand for additional earnest money was therefore unreasonable. That does not excuse his breach, however. Defendant was undoubtedly aware of plaintiffs' concern with closing the transaction quickly in view of the fact that the initial contract was rejected due to the lengthy period granted to defendant in which to obtain financing. Plaintiffs' demand for additional earnest money in return for an extension of the closing date was not a breach of the contract. This Court must therefore conclude that defendant is liable to plaintiffs for his breach of the May 10, 1978 Real Estate Contract.
Plaintiffs eventually sold the Rolla Holiday Inn for one million dollars ($1,000,000.00). Though the appraised value of the property may have been more, there is no evidence that plaintiffs did not make a good faith effort to sell the property at the highest price they could obtain. Plaintiffs are therefore entitled to the difference between the price the property was sold at and the price in the May 10, 1978 contract. Plaintiffs' damages are reduced, however, by the sixty thousand dollars ($60,000.00) they would have been required to pay to McRoberts and Company as commission had the deal gone through, and by the five thousand dollars ($5,000.00) they are now entitled to receive from the earnest money held by McRoberts and Company.
Defendant's argument that plaintiffs are limited in their recovery to the ten thousand dollars ($10,000.00) earnest money was rejected once by this Court, Order of September 24, 1979, and will be rejected again. Though defendant now raises the argument that plaintiffs included the liquidated damages provision in the contract for their protection, and should now be bound by it, there is no proof to that effect. It is just as likely that the provision was included for defendant's protection. This Court must therefore stand by its previous conclusion that the liquidated damages provision in void.
Judgment will therefore be entered in plaintiffs' favor in the amount of one hundred thirty-five thousand dollars ($135,000.00).